**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al.,** | X : |
| **Plaintiffs,** | : : : |
| -against- | : : |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | : : : |
| **Defendant,** | : : |
| -and- | : : |
| **The Trusts Identified in Exhibit 1,** | : : |
| **Nominal Defendants.** | : : X |

Case No. 1:14-cv-9371-KPF-SN

(Additional Case Captions on Following Pages)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**[*]

JONES DAY
250 Vesey Street
New York, NY 10281
Tel:    (212) 326-3939
Fax:    (212) 755-7306

Attorneys for Defendant
Wells Fargo Bank, N.A.

---

[*]  This motion is directed at the complaints in five separate actions against Wells Fargo Bank, N.A. ("Wells Fargo") in its role as trustee to certain residential mortgage backed securities:  an action by certain BlackRock funds and others against Wells Fargo (the "WF-BR Am. Compl."), and actions by NCUA, Phoenix Light, Royal Park and Commerzbank each against Wells Fargo (respectively, the "WF-NCUA 2d Am. Compl.," "WF-PL 2d Am. Compl.," the "WF-RP Am. Compl.," and the "WF-CB Compl.") (all five complaints, collectively, the "Complaints").

| | | |
|---|---|---|
| **ROYAL PARK INVESTMENTS SA/ NV, Individually and on Behalf of All Others Similarly Situated** | X : : : : : | Case No. 1:14-cv-09764-KPF-SN |
| **Plaintiffs,** | : : | |
| -against- | : : | |
| **WELLS FARGO BANK, N.A., as Trustee,** | : : | |
| **Defendant.** | : : X | |
| **NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union, derivatively and in its own right,** | X : : : : : : : : : : : | Case No. 1:14-cv-10067-KPF-SN |
| **Plaintiffs,** | : : | |
| -against- | : : | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | : : : | |
| **Defendant,** | : : | |
| -and- | : : | |
| **NCUA GUARANTEED NOTES TRUST 2010-R1, NCUA GUARANTEED NOTES TRUST 2010-R2, NCUA GUARANTEED NOTES TRUST 2010-R3, NCUA GUARANTEED NOTES TRUST 2011-R2, NCUA GUARANTEED NOTES TRUST 2011-R4, NCUA GUARANTEED NOTES TRUST 2011-R5, NCUA GUARANTEED NOTES TRUST** | : : : : : : : : : : : : : : | |

| | |
|---|---|
| **2011-M1,** | : |
| | : |
| | : |
| **Nominal** | : |
| **Defendants.** | X |
| **PHOENIX LIGHT SF LIMITED, et al.,** | X |
|                    **Plaintiffs,** | : |
| | : |
|   -against- | :    Case No. 1:14-cv-10102-KPF-SN |
| | : |
| **WELLS FARGO BANK, N.A.,** | : |
| | : |
|          **Defendant.** | : |
| | : |
| | : |
| | X |
| **COMMERZBANK AG,** | X |
| | : |
|          **Plaintiff,** | : |
| | :    Case No. 1:15-cv-10033-KPF-SN |
|   -against- | : |
| | : |
| **WELLS FARGO BANK, N.A.,** | : |
| | : |
|          **Defendant.** | : |
| | : |
| | X |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT BACKGROUND ............................................................................... 4

ARGUMENT ........................................................................................................ 8

I.     PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED ....... 8

II.    THE EOD-BASED CONTRACT AND FIDUCIARY DUTY CLAIMS FAIL ............. 11

III.   CERTAIN OF PLAINTIFFS' R&W BASED CLAIMS SHOULD BE
       DISMISSED ................................................................................................ 16

IV.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED ..................................... 18

V.     PLAINTIFFS' TIA CLAIMS ARE LEGALLY DEFICIENT ...................................... 21

VI.    THE PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED ................... 23

VII.   ROYAL PARK'S AND NCUA'S DERIVATIVE CLAIMS SHOULD BE
       DISMISSED ................................................................................................ 24

       A.    Royal Park And NCUA Lack Standing To Assert Derivative Claims ............... 24
       B.    Assuming Standing, Royal Park's And NCUA's Claims Are Not
             Derivative ................................................................................................ 29

VIII.  NCUA LACKS STANDING OVER ITS PURPORTED DIRECT CLAIMS .............. 30

IX.    COMMERZBANK'S CLAIMS ARE TIME BARRED ............................................ 30

CONCLUSION ........................................................................................................ 35

# TABLE OF AUTHORITIES

Page

C ASES

*17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*,
693 N.Y.S.2d 554 (1999)..........................................................................................20

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc.*,
No. 1:08-cv-07508 (S.D.N.Y. Feb. 18, 2011).........................................................32

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
25 N.Y.3d 581 (2015).........................................................................................16, 31

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
977 N.Y.S.2d 229 (1st Dep't 2013).................................................................1, 2, 28

*Alexander v. Sandoval*,
532 U.S. 275 (2001).........................................................................................21, 22

*Andrews v. Lakeshore Rehab. Hosp.*,
140 F.3d 1405 (11th Cir. 1998) ..............................................................................26

*Argonaut P'ship L.P. v. Bankers Tr. Co.*,
No. 96 CIV. 1970 (LLS), 2001 WL 585519 (S.D.N.Y. May 30, 2001)..................16

*Armstrong v. Exceptional Child Ctr., Inc.*,
135 S. Ct. 1378 (2015)............................................................................................22

*Arrowgrass Master Fund Ltd. v. Bank of New York Mellon*,
No. 651497/10, 2012 WL 800416 (NY Sup. Feb. 24, 2012), *aff'd* 106 A.D.3d
582 (1st Dep't 2013) ...............................................................................................13

*Baena v. Woori Bank*,
No. 05 CIV. 7018 (PKC), 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006)................31

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012)......................................................................................34

*BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*,
673 F.3d 169 (2d Cir. 2012).................................................................................4, 24

*BlackRock v. U.S. Bank Nat'l Assoc.*,
   No. 14-cv-9401 (KBF), 2015 WL 2359319 (S.D.N.Y. May 18, 2015)..................................30

*Bu ex rel. Bu v. Benenson*,
   181 F. Supp. 2d 247 (S.D.N.Y. 2001).....................................................................................24

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
   738 F. Supp. 2d 450 (S.D.N.Y. 2010).....................................................................................6, 7

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
   70 N.Y.2d 382 (1987) .............................................................................................................18

*Cnty. of Suffolk v. Long Island Lighting Co.*,
   728 F.2d 52 (2d Cir. 1984)......................................................................................................20

*Commerce Bank v. Bank of New York Mellon*,
   No. 651967/14, 2015 WL 5770467 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 2, 2015)..................12, 13

*Commerce Bank v. Bank of New York Mellon*,
   No. 651967/14, 2016 NY Slip Op 05339 (1st Dep't July 5, 2016) .........................2, 7, 10, 12

*Commerzbank AG v. HSBC Bank USA, N.A.*,
   No. 15 Civ. 10032 (LGS), 2016 BL 183580 (S.D.N.Y. June 8, 2016).............................19, 23

*Cornejo v. Bell*,
   592 F.3d 121 (2d Cir. 2010)...............................................................................................10, 12

*Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp. (In re
   Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.)*,
   Nos. 2:11-ML-02265- MRP, 13-CV-01118, 2014 WL 4162382 (C.D. Cal.
   June 18, 2014)..........................................................................................................................34

*Deutsche Zentral-Genossenschaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
   No. 12 Civ. 4025, 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013)............................................34

*Deutsche Zentral-Genossenschaftsbank v. Citigroup*,
   998 N.Y.S.2d 306, 2014 WL 4435991 ....................................................................................34

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011).....................................................................................5, 20

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
   838 F.2d 66 (2d Cir. 1988).......................................................................................................5

*Ely-Cruikshank Co. v. Bank of Montreal*,
    81 N.Y.2d 399 (1993) ........................................................................................................17

*FHFA v. HSBC*,
    33 F. Supp. 3d 455 (S.D.N.Y. 2014) ................................................................................9

*Fixed Income Shares: Series M., et al v. Citibank N.A.*,
    No. 653891/2015 (N.Y. Sup. Ct. N.Y. Cnty. June 22, 2016) ..................................11

*Global Fin. Corp. v. Triarc Corp.*,
    715 N.E.2d 482 (N.Y. 1999) ..........................................................................................31

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ........................................................................................................22

*Halebian v. Berv*,
    590 F.3d 195 (2d Cir. 2009) ..........................................................................................24

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002) ............................................................................................18

*HSN Nordbank AG v. RBS Holdings USA Inc.*,
    No. 13 CIV. 3303 PGG, 2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015) ................34

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
    634 F. App'x 19 (2d Cir. 2015) ...............................................................30, 31, 32, 33

*In re Am. Home Mortg. Holdings, Inc.*,
    411 B.R. 181 (Bankr. D. Del. 2009) ............................................................................17

*In re Gluck v. Amicor Inc.*,
    487 F. Supp. 608 (S.D.N.Y. 1980) ...............................................................................31

*In re Greenwich Sentry, L.P.*,
    534 F. App'x 77 (2d Cir. 2013) ....................................................................................18

*Knights of Columbus v. Bank of New York Mellon*,
    No. 651442/2011, 2015 WL 4501196 (N.Y. Sup., N.Y. Cnty. July 10, 2015) ..........12, 13, 14

*Landesbank v. Barclays Bank PLC*,
    No. 652697/2012, 2014 WL 3738082 (N.Y. Sup. Ct. N.Y. Cnty. July 28,
    2014) ..................................................................................................................................34

*Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
  180 F. Supp. 2d 465 (S.D.N.Y. 2001)......................................................29

*LNC Investments, Inc. v. First Fidelity Bank*,
  935 F. Supp. 1333 (S.D.N.Y. 1996).........................................................22

*Mackensworth v. S.S. Am. Merch.*,
  28 F.3d 246 (2d Cir. 1994).......................................................................28

*Magten Asset Mgmt. Corp. v. Bank of New York*,
  15 Misc. 3d 1132(A), 2007 WL 1326795 (Sup. Ct. N.Y. Cnty. 2007) ...................................15

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) .............................................................20

*Meckel v. Cont'l Res. Co.*,
  758 F.2d 811 (2d Cir. 1985)........................................................................6

*Millennium Partners, L.P. v. U.S. Bank National Association*,
  No. 12 Civ. 7581, 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013), *aff'd sub*
  *nom.*, *Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, No 15-3833 (2d
  Cir. July 6, 2016) ............................................................................. passim

*Multistack LLC v. Arctichill Inc.*,
  No. 05-cv-3865 (PAC), 2006 WL 510506 (S.D.N.Y. Mar. 1, 2006) .....................................30

*NCUA v. HSBC Bank USA, Nat'l Ass'n*,
  117 F. Supp. 3d 392 (2015) ......................................................................25

*NCUA v. U.S. Bank Nat'l Ass'n*,
  No. 14-cv-9928 (KBF), 2015 WL 2359295 (S.D.N.Y. May 18, 2015) ("*NCUA*
  *I*")........................................................................................25, 27

*NCUA v. U.S. Bank Nat'l Ass'n*,
  No. 14-cv-9928 (KBF), 2016 WL 796850 (KBF) (S.D.N.Y. Feb. 25, 2016)
  ("*NCUA II*")
  ...............................................................................20, 23, 25, 26, 27

*NCUA v. U.S. Bank Nat'l Ass'n*,
  No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016) ("*NCUA III*").............................25, 28, 30

*Negrõn-Almeda v. Santiago*,
  579 F.3d 45 (1st Cir. 2009)......................................................................26

*New York Bankers Ass'n, Inc. v. City of New York*,
No. 13-7212 (KPF), 2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) .......................................30

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
291 F.R.D. 47 (S.D.N.Y. 2013) ...................................................................................19

*Page Mill Asset v. Credit Suisse First Boston Corp.*,
98 CIV 6907 MBM, 2000 WL 335557 (S.D.N.Y. March 30, 2000)....................................21

*Pahuta v. Massey-Ferguson, Inc.*,
170 F.3d 125 (2d Cir. 1999)........................................................................................10

*Peak Partners, LP v. Republic Bank*,
191 F. App'x 118 (3d Cir. 2006) ...................................................................................5

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
No. 14-CV-10104 (VEC), 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015).......................9, 23

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*,
No. 14-CV-10103 (JGK), 2016 WL 1212573 (S.D.N.Y. Mar. 28, 2016) ............................17

*Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*,
No. 14-cv-10116 (KBF), 2015 WL 2359358 (S.D.N.Y. May 18, 2015)................................25

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
No. 14-CV-10116 (KBF), 2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016)........................20, 23

*Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of America*,
907 F. Supp. 2d 536 (S.D.N.Y. 2012)..............................................................................9, 19

*Policemen's Annuity & Benefit Fund v. Bank of America, NA*,
943 F. Supp. 2d 428 (S.D.N.Y. 2013)..................................................................................8

*Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of New York Mellon*,
914 F. Supp. 2d 422 ...........................................................................................................23

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*,
775 F.3d 154 (2d Cir. 2014).............................................................................4, 9, 19, 22

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*,
No. 11 Civ. 5459, 2014 WL 3858469 (S.D.N.Y. July 30, 2014) ...........................................19

*Rosner v. Bank of China,*
No. 06-cv-13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F.
App'x 637 (2d Cir. 2009) ........................................................................................9

*Rothman v. Gregor,*
220 F.3d 81 (2d Cir. 2000)......................................................................................33

*Royal Park Invs. SA/NV v. Bank of New York Mellon,*
2016 BL 63471 (S.D.N.Y. Mar. 02, 2016) ............................................................23

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,*
2016 BL 29785 (S.D.N.Y. Feb. 03, 2016) .............................................................30

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.,*
109 F. Supp. 3d 587 (S.D.N.Y. 2015)...............................................................23, 24

*Ruotolo v. City of New York,*
514 F.3d 184 (2d Cir. 2008).....................................................................................28

*S. Utah Wilderness Alliance v. Palma,*
707 F.3d 1143 (10th Cir. 2013) ...............................................................................30

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
552 U.S. 148 (2008)............................................................................................21, 22

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,*
845 A.2d 1031 (Del. 2004) ......................................................................................29

*Tran v. Bank of New York,*
No. 13 Civ. 580(RPP), 2014 WL 1225575 (S.D.N.Y. Mar. 24, 2014)..................24

*Univs. Research Ass'n. v. Coutu,*
450 U.S. 754 (1981).................................................................................................22

*Vincent v. The Money Store,*
915 F. Supp. 2d 553 (S.D.N.Y. 2013)......................................................................26

*Waters v. Horace Waters & Co.,*
94 N.E. 602 (N.Y. 1911)..........................................................................................25

*Yudell v. Gilbert,*
99 A.D.3d 108, 949 N.Y.S.2d 380 (1st Dep't 2012) ...............................................29

*Zeffiro v. First Penn. Banking & Trust Co.*,
    623 F.2d 290 (3d Cir. 1980)..................................................................................22

**STATUTES**

15 U.S.C. § 77ooo .....................................................................................................22

15 U.S.C. § 77www .....................................................................................................22

Fed. R. Bankr. Proc. 3003(c)(2)..................................................................................18

Fed. R. Civ. P. 17(a) ..................................................................................................26

Fed. R. Civ. P. 23.1 ...................................................................................................25

Fed. R. Civ. P. 44.1 ...............................................................................................31, 33

Fed. R. Evid. 201(b).....................................................................................................33

German Civil Code § 195 ............................................................................................31

Minn. Stat. § 501B.16 ................................................................................................21

N.Y. C.P.L.R. 213(2)...................................................................................................17

N.Y. C.P.L.R. 202....................................................................................................30, 31

N.Y. Real Property Law § 125(1)................................................................................24

N.Y. Real Property Law § 126(1)................................................................................23

N.Y. Gen. Oblig. Law § 13-107...............................................................................34, 35

**OTHER AUTHORITIES**

Bogert, *The Law of Trusts and Trustees*, §§ 1, 594, 712, 869 ......................................24

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated institutional investors, with deep experience investing in residential mortgage-backed securities ("RMBS").  At the height of the "housing bubble," certain Plaintiffs bought RMBS certificates, with some Plaintiffs purchasing hundreds of millions of dollars of certificates.[1]  When the bubble burst in 2008, the values of homes securing the mortgages underlying RMBS declined and some RMBS, but by no means all RMBS, suffered losses.  RMBS investors, working with experienced counsel and advisors, identified alleged breaches of representations and warranties ("R&W") regarding the underlying mortgage loans made by the Warrantors—the loan "Originators" and loan pool "Sponsors" who made R&Ws about the underlying loans—and alleged breaches by the servicers ("Servicers") servicing loans in the RMBS pool.  Long before the instant lawsuits were commenced, the investors, including many of these same Plaintiffs, executed a years-long litigation strategy in an attempt to resolve R&W claims in a variety of ways, including directing RMBS Trustees to pursue R&W claims against the Warrantors, leading to large settlements.  But, even though they were actively engaged in such litigation, Plaintiffs chose not to instruct Wells Fargo to pursue any such claims with respect to the Trusts at issue in these cases.

In 2013, New York's First Department cut off Plaintiffs' ability to direct trustees to pursue claims against Warrantors by clarifying the claims' accrual date for limitations purposes.  *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013), *aff'd* 25 N.Y.3d 581, 599 (2015).  Plaintiffs were then on the hunt for another deep-pocket defendant to blame for their own failures to act timely.  Hence, beginning in 2014, Plaintiffs have

---

[1] Other Plaintiffs bought RMBS certificates at significant discounts in the aftermath of the crisis, often for pennies on the dollar.  Still other Plaintiffs continued to invest in RMBS, including purchasing some of the RMBS certificates at issue here *after* the Complaints were filed and actively trading RMBS long after the conduct alleged was in the public eye.

embarked on the current litigation strategy seeking to hold RMBS Trustees liable for allegedly failing to timely press R&W claims against Warrantors and Servicers, claims they were actively pursuing before the *ACE* decision.

Plaintiffs here variously assert claims for alleged (i) contract breaches by servicers in connection with unspecified loans in the 53 different RMBS trusts at issue here (the "Trusts")[2] that purportedly led to events of default ("EODs"); (ii) contract claims relating to asserted breaches of R&Ws by Warrantors with respect to unidentified loans in the Trusts; (iii) tort-based claims arising out of the same alleged conduct; (iv) claims under the Trust Indenture Act ("TIA"); and (v) claims under New York's Streit Act.  In addition, certain of the Plaintiffs seek to assert derivative standing on behalf of *all* investors in the Trust or certify Trust-wide class actions.  As detailed below, contrary to Plaintiffs' assertions of sweeping obligations, Wells Fargo only had narrowly defined duties—set forth in the Trusts' Governing Agreements (the "GAs")—which bear little or no relation to the broad duties Plaintiffs allege.  Their claims fail in view of the GA's actual terms.  Indeed, despite repeated opportunities to amend their Complaints, Plaintiffs cannot overcome numerous, serious defects in their claims.[3]

First, in light of the First Department's July 5, 2016 decision in *Commerce Bank v. Bank of New York Mellon*, No. 651967/14, 2016 NY Slip Op 05339, at *4 (1st Dep't July 5, 2016), with respect to all the Complaints and all 53 Trusts at issue, Plaintiffs have not adequately pled contract claims of any variety.  In addition, Plaintiffs have not pled servicer EODs within the GAs' meaning.  Under New York law, including this week's First Department decision in

---

[2] Plaintiffs' complaints identify claims on behalf of 59 RMBS trusts, but six of those trusts overlap with each other among the various actions.

[3] Not all of the arguments summarized below apply equally to all five Complaints and all 53 Trusts at issue.  The Argument section of this Memorandum identifies the particular Complaints and Trusts to which each argument applies.  Following the submission of our reply brief, we will provide the same information in a more readily digestible tabular format.

*Commerce Bank* and the Second Circuit's affirmance in *Millennium Partners, L.P.* (*see infra* pp. 12-13), general disclosures of servicing failures in news reports, lawsuits, and the like do not constitute the written notice and/or actual knowledge of servicer conduct that the GAs require in defining EODs.  Generalized reports, however, are all that any of these Plaintiffs allege.

Second, with respect to 16 Trusts, Wells Fargo cannot be liable for allegedly failing to enforce R&W breaches because either (a) no such duty exists under those Trusts' GAs, or (b) Plaintiffs have failed to plead the prerequisites for enforcement of any contractual duty.  In addition, for three of the 53 Trusts, Plaintiffs' R&W claims are time barred; the time for bringing claims for breaches of R&Ws elapsed before Wells Fargo allegedly discovered the breaches at issue.  And, with respect to one Trust, Plaintiffs have failed to state a R&W claim because the parties who had a responsibility to cure, repurchase or substitute the loans were bankrupt or insolvent *before* Wells Fargo allegedly discovered the R&Ws in 2009.

Third, all Complaints fail to plead a viable tort claim.  The relationships between Plaintiffs and Wells Fargo are defined entirely by the relevant GAs.  Thus, as numerous judges considering similar RMBS suits have found, Plaintiffs' tort claims are duplicative of their contract claims and/or barred by the economic loss rule.

Fourth, all claims under the TIA fail because that Act contains no right of private action or private remedy.  Also, Plaintiffs' TIA claims relating to PSA Trusts must be dismissed under Second Circuit precedent, and NCUA's and Royal Parks' claims under TIA § 315(a) should be dismissed because that provision imposes no trustee duty that was allegedly breached here.

Fifth, with respect to four Complaints, Plaintiffs fail to allege any violation of the Streit Act, which does not apply to RMBS.

Sixth, Royal Park's and NCUA's derivative claims should be dismissed because those plaintiffs lack standing to pursue claims on a derivative basis.  In addition, NCUA lacks standing with respect to all trusts at issue in its Complaint because it either transferred its interest or failed to obtain a direct interest in the trusts before filing its complaint.  Moreover, any injury Royal Park or NCUA claim to have suffered could only support a direct claim.

Finally, Commerzbank's claims with respect to a majority of its Trusts are time barred due to the application of the German statute of limitations, which is applicable as a result of New York's borrowing statute.  Alternatively, Commerzbank lacks standing to pursue claims for the RMBS certificates it admits to have sold on and after 2011.

## RELEVANT BACKGROUND

In an RMBS securitization, "a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers." *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*, 775 F.3d 154, 156 (2d Cir. 2014) ("*PABF*") (internal quotation marks and citation omitted).  The entities who issue the mortgages—*i.e.*, lend money to borrowers—are typically called "Originators"; the entities that pool the mortgages are called "Sponsors" or "Sellers"; and a "Depositor" conveys the pool of mortgages to an RMBS trust or trustee.  At closing, the Sponsor selects the Servicer(s) that will enforce the mortgage terms and administer the borrower payments.

These cases involve two different types of RMBS trusts (the "Trusts"):  PSA Trusts and Indenture Trusts.  PSA Trusts "are organized under New York [common] law."  *PABF*, 775 F.3d at 156.  With PSA Trusts, "[t]he right to receive trust income is parceled into certificates and sold to investors, called certificateholders."  *Id.*  "The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a" PSA.  *Id.*  Under the PSA, the trustee holds the trust property "for the benefit of investors."  *BlackRock Fin. Mgmt.*

*Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d Cir. 2012). Of the

53 Trusts at issue here, 41 are PSA Trusts. Ex. D.[4]

Indenture Trusts have a two-trust structure, including one common law indenture trust

(for which RMBS trustees such as Defendants serve as indenture trustees), and one Delaware

statutory trust called an "owner trust" or the "Issuer." Indenture Trusts are created by a trust

agreement to which the Depositor, the owner trustee, and an administrator are parties. Indenture

Trusts differ from PSA Trusts in that the Depositor conveys ownership of the pooled loans to the

Issuer, which in turn issues its own notes pursuant to the indenture. Under the indenture, the

Issuer collateralizes the notes by pledging the mortgage loans to the indenture trustee, which

holds the pledge on behalf of the noteholders. Of the 53 Trusts at issue here, 12 are Indenture

Trusts. Ex. E.

While RMBS trusts have the word "trust" in their name, RMBS trusts and ordinary trusts

(*e.g.*, testamentary trusts) are "different legal animal[s]." *Peak Partners, LP v. Republic Bank*,

191 F. App'x 118, 122 (3d Cir. 2006). Unlike ordinary trustees, RMBS trustees' duties "are

***exclusively defined*** by the terms of the" GAs. *Elliott Assocs. v. J. Henry Schroder Bank & Trust*

*Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (emphasis added); *see Ellington Credit Fund, Ltd. v. Select*

*Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011) ("[T]hese constraints apply

with similar force to securitization trustees subject to PSAs . . . ."). Thus, the RMBS trustee "is

not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who

---

[4] In light of page limits, this Memorandum often cites only to exemplar trusts. But, each GA is different. Accordingly, Defendant has submitted detailed charts as exhibits to the Declaration of Howard F. Sidman In Support of Defendant Wells Fargo, N.A.'s Motion To Dismiss the Complaint ("Sidman Declaration"). These charts are denoted "Ex. XX" and list the relevant trusts or specific GA provisions implicated by the various arguments. Five separate Sidman declarations have been filed in the five cases. Lettered exhibits (A-Z, AA-CC) are common to all five declarations. Numbered exhibits are GA excerpts specific to the Trusts at issue in each case and therefore vary across the five declarations.

has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985).

The duties of a corporate trustee, such as an RMBS trustee, "are limited, administrative, and ministerial (rather than substantive) in nature.  Such duties include, by way of example, delivering certificates." *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473 (S.D.N.Y. 2010).  RMBS trustees can rely on Warrantors' R&Ws, *see, e.g.*, Ex. Y at §8.02(a)(v), and they are not required to monitor Servicers, *see, e.g., id.* at §8.02(a)(vi).

At or prior to a securitization's closing, Warrantors make R&Ws to the transaction parties about the nature and quality of the loans conveyed to the RMBS trustee.  *See e.g.*, Ex. Z at §2.04.  The RMBS trustee is entitled to rely on those R&Ws, and has no obligation to investigate their veracity.  *See, e.g.*, Ex. Y at §8.02(a)(v).  After a securitization's closing, Servicers—not trustees—have relationships with individual borrowers, collect payments, work with borrowers upon default, modify loans, and, if necessary, foreclose.  *See, e.g., id.* at Article III.  The RMBS trustee neither services loans nor supervises Servicers.  *See, e.g.,* Ex. AA at §§3.01, 3.06.  Rather, Servicers annually certify to the trustee or the "Securities Administrator" that they complied with applicable servicing criteria.  *See, e.g.,* Ex. Y at §3.20.  The RMBS trustee may "conclusively rely" upon the accuracy of such certificates that it in good faith believes to be genuine.  *See, e.g., id.* at §8.01, 8.02(a)(i).

In certain instances, the failure of a Servicer to perform its contractual duties may lead to a Servicer EOD.  Prior to a contractually-defined EOD, however, generally investors **themselves** can affirmatively trigger any obligation of the RMBS trustee to initiate investigations or enforcement proceedings.  *See, e.g., id.* at §§8.02(a)(v), 11.03.  Even then, the RMBS trustee has

no obligation to exercise those powers absent a contractual or negotiated indemnification.  *See, e.g., id.* at §§8.02(a)(iii).  Indeed, the First Department recently held that, under New York law, an RMBS trustee "does not have a duty to 'nose to the source'" to "discover" if breaches of the GAs or Servicer EODs have occurred.  *Commerce Bank*, 2016 NY Slip Op 05339, at *4.  This is true even if the trustee is aware of "systematic improper servicing and administration conduct" described in well-publicized governmental actions.  *Id.*

This allocation of duties is economically rational.  The *investors* hold all the potential economic upside, downside and risks with respect to trust assets, while the trustee bears no such exposure.  The allocation of duties reflects that investors are best positioned to evaluate their risk tolerance for complex structured products, and courts have recognized that "no reasonable investment fund in the plaintiff's position would have permitted its interests . . . to be protected only by a Trustee."  *CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 474.  RMBS trustees do not accept economic risk in these transactions and are expressly protected from having to risk their own funds even in performing their defined GA duties.  *See, e.g.,* Ex. Y at §8.01.  Unlike institutional investors in RMBS, the trustee receives "pocket change in comparison to all other economic aspects of [the] transaction."  *CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 474.  The low fees make economic sense:  they reflect the trustees' limited role, their narrow, largely ministerial duties, and their bargained-for exculpations from liability.

At bottom, the Complaints seek substantively to change and expand Wells Fargo's duties under the GAs and fashion new contractual and tort duties that are not contemplated by the agreements or supported by New York law.  For the reasons that follow, Plaintiffs' attempt to rewrite the GAs fails.

## ARGUMENT

### I.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

Wells Fargo appreciates that it should avoid briefing issues that have been resolved repeatedly against RMBS trustees. But, rulings over the last two weeks by New York state courts, including the First Department, and one recent Second Circuit decision, seriously undermine the federal court decisions to date rejecting the RMBS trustees' contract-based arguments. Wells Fargo respectfully submits that, in light of the recent decisions, it is appropriate for this Court to revisit whether allegations of generalized knowledge of R&W and servicer breaches provide a sufficient basis from which to infer actual trustee knowledge and/or discovery of the breaches giving rise to a contractual duty by the trustee to act.

With respect to virtually all Trusts at issue, Wells Fargo's duty, if any, to give notice of, or enforce, a Warrantor's alleged breach arises only "upon discovery" of that breach. *See, e.g.*, Ex. Y at §2.03. For alleged servicer breaches, Wells Fargo must have written notice and/or "actual knowledge" of such breaches to trigger its duties under the GAs. *See* Exs. F, G, H. The Complaints do not adequately allege discovery or actual knowledge of any such breaches. Plaintiffs have not alleged even ***one example*** of Wells Fargo's discovery or actual knowledge of a specific breach for any loan in any Trust at issue here. Rather, the Complaints cite only publicly available reports of generalized misconduct, increased default rates, credit downgrades, and breaches in various trusts, many of which are not at issue here.

At most, these generalized allegations establish that Wells Fargo may have been alerted to a ***possibility*** of a breach, not that it discovered any ***actual breaches*** in the loans in the Trusts. Such allegations are insufficient as a matter of law to prove knowledge or discovery. "[A] viable breach of contract claim depends on the Trustee's ***actual notice*** of a breach of the PSA." *Policemen's Annuity & Benefit Fund v. Bank of America, NA*, 943 F. Supp. 2d 428, 442

-8-

(S.D.N.Y. 2013) (emphasis added), *abrogated on other grounds by PABF*, 775 F.3d 154.  Mere

"suspicion of falsity, before it ripens into actual knowledge, will not suffice." *FHFA v. HSBC*,

33 F. Supp. 3d 455, 481 (S.D.N.Y. 2014); *see also Rosner v. Bank of China*, No. 06-cv-13562,

2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008), *aff'd* 349 F. App'x 637 (2d Cir. 2009)

(same).

  To date, the district courts have generally rejected certain of the trustee defendants'

arguments in similar RMBS litigation, holding that, at the motion to dismiss stage, allegations of

"public and private investigations as well as Congressional reports" provide an adequate basis

from which the Court can infer actual knowledge or discovery of a breach.  *Policemen's Annuity*

*& Benefit Fund of the City of Chicago v. Bank of America*, 907 F. Supp. 2d 536, 553-54

(S.D.N.Y. 2012); *see also Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104

(VEC), 2015 WL 5710645, *4 (S.D.N.Y. Sept. 29, 2015) (citing *Policemen's Annuity* for the

proposition that, at the pleading stage, it is sufficient to allege "that [the Trustee] was on notice

of so many deficiencies surrounding the mortgages—including missing paperwork, underwriting

failures, and other seller breaches—that it surely would have conducted a minimal, albeit

(perhaps) not contractually required, investigation that would have unearthed the Servicer

misconduct, which, Plaintiffs allege, constitutes one or more Events of Default.").  The rationale

is that "[a] party 'discovers a breach when it knows or *should know* that the breach has occurred."

*Policemen's Annuity*, 907 F. Supp. 2d at 553 (emphasis in original).  "Although learning of facts

merely suggestive of a breach would not require the Trustee to immediately raise a claim, upon

receipt of such notice, it becomes incumbent upon the trustee to **pick up the scent and nose to**

**the source.**" *Id.* at 553 (emphasis supplied; internal quotation marks, citations and alterations

omitted).   Indeed, two of the complaints in these actions use the very same language to describe

Wells Fargo's supposed duties.  WF-CB Compl.  ¶ 71  ("At a minimum, in its role as trustee to hundreds of RMBS trusts, Wells Fargo was privy to information that would have provided the 'scent' of a problem with the loans underlying the Covered Trusts.  Having caught wind of the problem, Wells Fargo had statutory and common law duties requiring them to 'nose to the source.'"); WF-PL 2d Am. Compl. ¶ 97 (same).

The First Department, however, definitively rejected that rationale this week.  It made clear that as a matter of New York contract law, "the trustee of an RMBS . . . trust **does not have a duty to 'nose to the source**.'"  *Commerce Bank*, 2016 NY Slip Op 05339, at *4.  After citing several of the federal district decisions denying motions to dismiss similar contract claims against RMBS trustees, the First Department reversed the ruling of the trial court and held that the claims relating to breaches of R&Ws should be dismissed because "Plaintiffs do not allege that the trustee discovered breaches of such representations and warranties."  *Id.*

Although other district courts have previously concluded otherwise, the First Department's recent decision is binding and warrants a different outcome.  Per the Second Circuit, this Court is "bound to apply the law [of New York] as interpreted by New York's intermediate appellate courts . . . unless [it] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion."  *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

In addition, the New York Supreme Court (Ramos, J.) recently ruled from the bench in a similar case filed by the BlackRock plaintiffs in New York state court against another RMBS trustee (Citibank, N.A.) that discovery or actual knowledge cannot be inferred from generic public information about originator and servicer misconduct.  Transcript of Oral Argument at 38-

43, *Fixed Income Shares: Series M., et al v. Citibank N.A.*, No. 653891/2015 (N.Y. Sup. Ct. N.Y.

Cnty. June 22, 2016) (attached as Ex. BB).  Addressing BlackRock's allegation that Citibank

learned of breaches through government settlements involving servicers and originators

generally, the court held:  "That's nonsense. . . . .  I don't care what these settlements were. . . . I

want to know about a specific allegation in the complaint that this trustee, Citibank, knew that

there were breaches. . . not that there was a problem being reported in the newspapers." *Id.* at 38.

"You can't just say generally speaking, there are a lot of bad loans out there.  There are always

bad loans." *Id.* at 41. On that basis, Justice Ramos ordered that the BlackRock plaintiffs re-plead

their complaint.  *Id.* at 41-43.

The GAs at issue are governed by New York law.  The New York courts do not interpret

the GAs as requiring any response by trustees to public information about servicer and originator

breaches generally, because the public information says ***nothing*** about the particular loans and

servicers in specific trusts.  Plaintiffs allege only generalized knowledge (and, in some instances,

not even general information) about the originators and servicers for the Trusts and loans at issue.

Accordingly, Plaintiffs' breach of contract claims fail as a matter of law.

## II.     THE EOD-BASED CONTRACT AND FIDUCIARY DUTY CLAIMS FAIL.

Every Plaintiffs' breach of contract and fiduciary duty claims based on alleged Servicer

EODs should also be dismissed because Plaintiffs have not sufficiently pled EODs.

The relevant GAs define EODs to require that specific trust entities have written notice

and/or actual knowledge of the servicer violations in the specific trust at issue.  *See* Exs. F, G, H.

As a matter of New York law, generalized allegations of improper servicing and of knowledge

through media reports, investigations, and lawsuits will not demonstrate the written notice or

actual knowledge required for an EOD.  *See, e.g.,* Transcript of Oral Argument at 38-43, *Fixed*

*Income Shares: Series M., et al v. Citibank N.A.,* No. 653891/2015 (N.Y. Sup. Ct. N.Y. Cnty.

June 22, 2016) (attached as Ex. BB) (characterizing BlackRock's allegations of trustee's

"generalized knowledge" based on public reports as "nonsense").  In the recent and controlling

*Commerce Bank* decision, the First Department reviewed Justice Scarpulla's two separate

dismissals of EOD-based claims on almost identical grounds. Justice Scarpulla held:

> [Plaintiff] has failed to plead any specific failure by the Master
> Servicer, of which there was notice, written or otherwise, sufficient
> to constitute an Event of Default.  Rather, it only refers to
> widespread knowledge of alleged improper servicing on the part of
> Countrywide, such as robo-signing, and illegally foreclosing on
> homes owned by members of the military, of which it had general
> knowledge through news media reports, investigations and
> lawsuits. As such, this fourth alleged breaching act will not serve
> as a basis for plaintiffs' breach of contract claim.

*See Commerce Bank v. Bank of New York Mellon*, No. 651967/14, 2015 WL 5770467, at *5

(N.Y. Sup. Ct. N.Y. Cnty. Oct. 2, 2015); *id.* at *5-6 (dismissing EOD-based claims for breach of

contract and breach of fiduciary duty); *Knights of Columbus v. Bank of New York Mellon*, No.

651442/2011, 2015 WL 4501196, at *4 (N.Y. Sup., N.Y. Cnty. July 10, 2015) (same).

The First Department affirmed the decisions, holding that Justice Scarpulla "correctly

dismissed so much of the contract claims as was based on defendant's failure to give notice of an

Event of Default pursuant to section 7.03(b) of the PSAs."  *Commerce Bank v. Bank of New York

Mellon*, No. 651967/14, Slip. Op., at *3.  In its view, a "letter sent by [a] nonparty . . . was not a

notice of an Event of Default; rather, it was a notice of events that, with time, might ripen into

Events of Default."  *Id.* at 4.  The court also rejected the argument that this notice should have

triggered some investigation by the trustee, holding that "the trustee of an RMBS (residential

mortgage-backed securities) trust does not have a duty to 'nose to the source.'"  *Id.*  This Court

should not reach a different result.  *See Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010).

The First Department's decision this week is further buttressed by the Second Circuit's

ruling, also this week, that EODs require the specific notice provided in the GAs.  *Millennium*

*Partners, L.P. v. U.S. Bank National Association*, No. 12 Civ. 7581, 2013 WL 1655990, at *5

(S.D.N.Y. Apr. 17, 2013), *aff'd sub nom.*, *Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*,

No 15-3833 (2d Cir. July 6, 2016) (summary order adopting the district's ruling and logic)

(attached as Ex. I).  In *Millennium Partners*, the district court held that plaintiffs "do not plead

that the requisite written notice was given to trigger an Event of Default," if the trustee never

received written notice from investors with the requisite voting rights.  *Id.*; *see also Arrowgrass*

*Master Fund Ltd. v. Bank of New York Mellon,* No. 651497/10, 2012 WL 800416 at *4 (NY Sup.

Feb. 24, 2012), *aff'd* 106 A.D.3d 582 (1st Dep't 2013) (rejecting allegations that trustee's

knowledge of facts from news reports and documents relevant to the transaction were sufficient

to provide a trustee with actual knowledge of an event of default).  In light of these First

Department and Second Circuit decisions, Plaintiffs' EOD-based claims must fail.

Plaintiffs do not allege for each Trust a "specific failure" by the servicer "of which there

was notice."  Instead, they assert only that Wells Fargo "had knowledge of . . . defaults by the

servicers through, among other things, public reports, lawsuits, exception reports, remittance

reports, and the increasing delinquency and loss rates for the Trusts."  *See, e.g.*, WF-BR Am.

Compl. ¶ 197.  They allege in the most general terms that the Trusts' servicers failed "to observe

or perform in any material respects the [GA's] covenants," and that these alleged failures gave

rise to EODs.  *See, e.g.*, WF-BR Am. Compl. ¶¶ 145, 164; *see also* WF-BR Am. Compl. ¶ 207

(asserting fiduciary duty triggered by EOD); WF-PL 2d Am. Compl. ¶ 186; WF-CB Compl.

¶ 155; WF-NCUA 2d Am. Compl. ¶ 414.  In the *Commerce Bank* and *Knights of Columbus*

cases, as here, the plaintiffs alleged that the trustee knew of EODs through "widespread

knowledge" of alleged "robo-signing[] and illegally foreclosing on [subject] homes."  *Commerce*

*Bank*, 2015 WL 5770467, at *5; *Knights of Columbus,* 2015 WL 4501196, at *4; *see* WF-BR

Am. Compl. Ex. 13 (describing generalized public reports of "robosigning" and "wrongful foreclosure practices"); WF-RP Am. Compl. ¶¶ 117, Appendix 5 (same); WF-PL 2d Am. Compl. ¶¶ 121-128 (alleging "robo-signing on a widespread basis"); WF-NCUA 2d Am. Compl. ¶ 108 (alleging abuses such as "robo-signing" of false affidavits).  As in the New York cases, those allegations are insufficient to constitute an EOD as a matter of New York law.

Under New York law, the actual knowledge or written notice must concern the specific trust at issue, and the failure to plead actual knowledge or written notice applicable to the specific, relevant trust is grounds for dismissal.  *See Knights of Columbus*, 2015 WL 4501196, at *4.  Thus, Plaintiffs' allegations that Wells Fargo received written notices of EODs in connection with "trusts that are not the subject of this action," *see, e.g.*, WF-BR Am. Compl. ¶ 146-151, are plainly insufficient under New York law to support any plausible inference of a breach of contract.

Exception reports, remittance reports, and increasing delinquency and loss rates similarly fail to confer knowledge of specific servicer conduct on the specified trust entity.  Indeed, the GAs frequently define knowledge as actual knowledge and/or written notice of the default *from* a specifically identified entity.  *See, e.g.*, Ex. Y at §8.01 ("[T]he Trustee shall not be charged with knowledge of any failure by the Servicer to comply with [its] obligations . . . [absent] actual knowledge of such failure or [unless] the Trustee receives written notice of such failure from the Servicer, the NIMS Insurer or the Majority Certificateholders"); *see also* Ex. J.  For many Trusts, written notice from a party other than the one specifically identified in the GA will not confer the knowledge required for an EOD.  *See Millennium Partners*, 2013 WL 1655990, at *4-5 (holding that "Plaintiffs, however, do not plead that the requisite written notice was given to trigger an Event of Default because they do not allege that they owned 50% of the Aggregate Voting

Interests necessary to satisfy the notice requirement of Section 6.14(ii)"); *see also Magten Asset Mgmt. Corp. v. Bank of New York*, 15 Misc. 3d 1132(A), 2007 WL 1326795, at *4 (Sup. Ct. N.Y. Cnty. 2007) (holding that trustee had no actual knowledge based on an SEC filing).

Plaintiffs cannot plausibly plead the requisite knowledge by alleging that Wells Fargo should have known of defaults based upon a purported duty to monitor, oversee or investigate servicers.  Plaintiffs identify no provision in the GAs requiring the Trustee to monitor, oversee or investigate servicers prior to an EOD.  *See, e.g.*, WF-BR Am. Compl. ¶¶ 63-72; NCUA 2d Am. Compl. ¶ 89 (alleging monitoring duty after knowledge of EOD).  Nor can they.  Prior to an EOD, the trustee has no duty to investigate servicing issues absent a direction from noteholders. *See, e.g.*, ABFC 2006-OPT1 § 8.02(a)(v) ("prior to the occurrence of a Servicer Event of Termination . . . the Trustee shall not be bound to make any investigation into the facts or matters stated in any . . . document[], unless requested in writing to do so by the Majority Certificateholders").  The trustee's "duty [does] not extend to undertaking a complicated and unavoidably speculative investigation in order to decide whether there was or would be an event of default."  *Magten Asset Mgmt. Corp.* 2007 WL 1326795,  at *7.

Finally, certain of Plaintiffs' EOD-based claims separately fail given Plaintiffs' failure to allege misconduct by the specific Servicers at issue.  The Complaints contain a host of allegations regarding generalized servicing misconduct with respect to Servicers for 48 of the 53 trusts.  For the remaining five Trusts, Plaintiffs fail to allege ***any*** Servicer misconduct.  *See* Ex. K. For example, IMPAC Funding Corporation ("IMPAC") serviced four Trusts with alleged servicing-related EODs, but Plaintiffs make no IMPAC-specific allegations and allege no breach by IMPAC, much less a material breach, that could have triggered an EOD.  Thus, all breach of

contract claims predicated on Wells Fargo's purported breach of post-EOD duties must be dismissed with respect to the five Trusts in Exhibit K.

## III.    CERTAIN OF PLAINTIFFS' R&W BASED CLAIMS SHOULD BE DISMISSED.

Although the Court should dismiss the claims relating to R&W breaches for the reasons set forth in Section I, there are additional Trust-specific reasons certain R&W claims fail.  With respect to fourteen of the Trusts at issue (identified in Exhibit L hereto), Plaintiffs' contract claims concerning Wells Fargo's obligation to enforce R&W breaches cannot survive, because the GAs lack any such duty.  Plaintiffs allege that Wells Fargo breached the GAs by purportedly failing to "take any action to enforce the sellers' repurchase of the defective mortgage loans." *See e.g.*, WF-BR Am. Compl. ¶ 163.  But fourteen Trusts do not obligate Wells Fargo to enforce repurchase obligations at all.  *See* Ex. L.  And, two of the Trusts require Wells Fargo to enforce those obligations only under specific circumstances not pled here, including the receipt of written notice of a breach or upon satisfaction of other conditions precedent.  *See* Ex. M.  Plaintiffs have not alleged satisfaction of those preconditions, rendering the claims invalid as a matter of law. *See Argonaut P'ship L.P. v. Bankers Tr. Co.*, No. 96 CIV. 1970 (LLS), 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001).

In addition, to the extent that Wells Fargo had an obligation to enforce claims regarding R&Ws, it could only do so within six years of the closing of each trust.  *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 599 (2015).  For the three Trusts in Exhibit N, Plaintiffs failed to allege that Wells Fargo knew of R&W breaches prior to the expiration of the Warrantors' obligations to repurchase loans that breached R&Ws.  For example, the statute of limitations to bring claims asserting representation and warranty breaches against EMC Mortgage Corp. ("EMC"), as Warrantor for loans held by GPMF 2005-AR4 ended on August 1, 2011.  However, the earliest date on which Plaintiffs allege that Wells Fargo had knowledge of

EMC's misconduct is January 9, 2012, WF-BR Am. Compl. Ex. 14 at 1, well after any potential claims against EMC had expired.  For four additional Trusts, Plaintiffs fail to include any allegation regarding the relevant Warrantors, let alone allegations supporting a plausible inference that Wells Fargo had knowledge of R&W breaches within the applicable limitations period.  *See* Ex. O.  Accordingly, all breach of contract claims predicated on Wells Fargo's purported failure to enforce R&W claims must be dismissed with respect to the three Trusts identified in Exhibit N and four Trusts in Exhibit O.

Finally, Plaintiffs' claims fail to the extent they would have required Wells Fargo to enforce claims against then-defunct Warrantors.  Plaintiffs allege that, "beginning in 2009," [5] Wells Fargo discovered material breaches of R&Ws by Warrantors but failed to enforce the Warrantors' obligations to cure, substitute or repurchase those loans.  *See* WF-PL 2d Am. Compl. ¶ 97; WF-CB Compl. ¶ 72.  However, as to American Home Mortgage Investment Trust 2004-2 ("AHM 2004-2"), Wells Fargo could not enforce any such rights.  The Warrantor, American Home Mortgage Acceptance, Inc. ("American Home"), the sole Warrantor for the Trust,[6] *see BlackRock* Ex. 1 at §3.12, Annex A, commenced bankruptcy proceedings on August 6, 2007.  *See In re Am. Home Mortg. Holdings, Inc.*, 411 B.R. 181, 184 (Bankr. D. Del. 2009) ("On August 6, 2007, each of the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.").  As a matter of law, asserting claims against American Home

---

[5] Plaintiffs do not allege that Wells Fargo knew of Indenture Events of Default prior to 2009, presumably because any alleged breaches of contract accruing prior to 2009 would be time-barred.  *See* N.Y. C.P.L.R. 213(2); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402-03 (1993); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-10103 (JGK), 2016 WL 1212573, at *5 (S.D.N.Y. Mar. 28, 2016) (dismissing claims pre-receivership claims relating to IndyMac as time-barred).

[6] The BlackRock plaintiffs agree that American Home Mortgage Acceptance, Inc. is the sole party required by the AHM 2004-2 trust's governing agreements to repurchase, cure, or substitute any loans that allegedly breach representations and warranties.

after that date would have been futile.   *See* Fed. R. Bankr. Proc. 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."); *In re Greenwich Sentry, L.P.*, 534 F. App'x 77, 81 (2d Cir. 2013) (disallowing interest where interest holder failed to file a timely proof of interest by the bar date)  For the same reason, there is no causal connection between Wells Fargo's alleged conduct and Plaintiffs' claimed losses with respect to that Trust.

## IV.   PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' many tort claims—which are variously styled as breach of fiduciary duty (*e.g.*, WF-BR. Am. Compl. ¶¶ 206-212), negligence (*e.g.*, WF-PL 2d Am. Compl. ¶¶ 189-192), conflict of interest (*e.g.*, WF-BR. Am. Compl. ¶¶ 213-221), breach of trust (*e.g.*, WF-RP Am. Compl. ¶¶ 187-192), and breach of good faith and fair dealing (*e.g.*, WF-NCUA 2d Am. Compl. ¶¶ 417-423)—should be dismissed as impermissibly duplicative of Plaintiffs' contract claims and/or barred by the economic loss rule.

Plaintiffs' tort claims arise out of Wells Fargo's asserted contractual obligations under the GAs, rendering the tort and contract claims impermissibly duplicative.  *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987); *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  NCUA, Phoenix Light, and Commerzbank make no genuine attempt to define conduct independent of the contract; they consistently reference "the conduct described above," "[a]s set forth above," or "[a]s described above," *i.e.*, in the contract claim, as the basis for their tort claims.  *See* WF-NCUA 2d Am. Compl. ¶ 414, 421; WF-PL 2d Am. Compl. ¶ 186, 190, 202; WF-CB Compl. ¶¶ 156, 159, 170.  Where some allegations are provided, they prove the overlap.  For example, the conflict of interest and breach of trust claims

arise from an asserted failure to enforce R&W claims, an obligation that would only exist contractually.  *See* WF-RP Am. Compl. ¶ 189; WF-BR. Am. Compl. ¶ 220.  The fiduciary duty claims arise from heightened duties allegedly triggered by contractual EODs.  *See* WF-BR Am. Compl. ¶ 207; WF-PL 2d Am. Compl. ¶ 186; WF-CB Compl. ¶ 155; WF-NCUA 2d Am. Compl. ¶ 414.

Where, as here, tort claims are based on a trustee's alleged failure "in the management and oversight of the [ ] Trust," the Second Circuit has confirmed that "negligence claim must be dismissed as duplicative of the contract claim."  *Millennium Partners*, 2013 WL 1655990, at *5, *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, No 15-3833 (2d Cir. July 6, 2016) (summary order adopting the district court's decision) (attached as Ex. I).  For this reason, numerous courts have dismissed tort claims in analogous RMBS cases, holding them "not cognizable because [they are] predicated on the same factual elements as its breach of contract claim—namely, [the trustee's] alleged failure to comply with its PSA obligations and the damages allegedly sustained by [plaintiffs] as a third-party beneficiary of those agreements."  *Commerzbank AG v. HSBC Bank USA, N.A.*, No. 15 Civ. 10032 (LGS), 2016 BL 183580, at *3 (S.D.N.Y. June 8, 2016); *see also Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*, No. 11 Civ. 5459, 2014 WL 3858469, at *4 (S.D.N.Y. July 30, 2014); *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 72 (S.D.N.Y. 2013), abrogated on other grounds by *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014); *Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of America*, 907 F. Supp. 2d 536 , 558-59 (S.D.N.Y. 2012).

In addition, Plaintiffs' damages are separately barred by New York's economic loss rule, which provides that "a contracting party seeking only a benefit of the bargain recovery may not

sue in tort notwithstanding the use of familiar tort language in its pleadings." *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 693 N.Y.S.2d 554, 559 (1999); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007); *Cnty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62-63 (2d Cir. 1984). As Judge Forrest has explained in a similar case currently pending against an RMBS trustee in the Southern District, alleged damages arising from non-contract claims "sound in defendants' failure to take contractual actions—that is, losses due to failures 'to take action in response to servicer violations' and 'to alert the certificateholders to the servicers' misconduct.'" *NCUA v. U.S. Bank N.A.*, No. 14-cv-9928 (KBF), 2016 WL 796850, at *11 (S.D.N.Y. Feb. 25, 2016); *see also Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 (KBF), 2016 WL 1169515, at *9 (S.D.N.Y. Mar. 22, 2016) ("The damages that plaintiffs allege in connection with the breach of fiduciary duty claims arise entirely from defendants' obligations under the PSAs."). In light of the overlapping damages theory, Judge Forrest concluded that "while the cause of action for breach of fiduciary duty may arise from common law duties and not from the PSA, 'the injury' and 'the manner in which the injury occurred and the damages sought persuade us that plaintiff's remedy lies in the enforcement of contract obligations,' and are barred by the economic loss doctrine." *NCUA v. U.S. Bank*, 2016 WL 796850, at *11 (quoting *Bellevue S. Assocs. v. HRH Const. Corp.*, 78 N.Y.2d 282, 293 (1991)). The same is true here.

With respect to their conflict of interest and breach of trust claims in particular, Plaintiffs fail to allege sufficient facts demonstrating that Wells Fargo personally benefitted at the investors' expense. *See Ellington Credit Fund*, 837 F. Supp. 2d at 193. Plaintiffs, instead, challenge Wells Fargo's alleged failure to enforce breaches of R&Ws (WF-RP Am. Compl. ¶ 189) without alleging any basis for inferring a personal benefit to Wells Fargo. Plaintiffs do

not, and cannot, allege that Wells Fargo failed to act against itself, because Wells Fargo did not originate or service any of the loans in the Trusts. At most, the *BlackRock* Plaintiffs allege that Wells Fargo benefitted from failing to enforce claims relating breaches of R&Ws by shielding its own origination business from other potential claims relating to breaches of R&Ws for loans not at issue in these Trusts (*see* WF-BR Am. Compl. ¶ 218). There is no claim, and can be no claim, of an agreement within the RMBS industry of mutual non-enforcement that would inure to Wells Fargo's financial benefit. Allegations of general relationships in the financial sector are insufficient. *See Page Mill Asset v. Credit Suisse First Boston Corp.*, 98 CIV 6907 MBM, 2000 WL 335557, at *10 (S.D.N.Y. March 30, 2000).

In addition, for at least 41 Trusts, Wells Fargo has filed Petitions for Instructions in the Administration of a Trust, pursuant to Minn. Stat. § 501B.16. *See* Ex. P. Those Petitions seek confirmation of Law Debenture Trust Company of New York's ("Law Deb's") appointment as separate trustee to evaluate and potentially institute suits against loan sellers and originators relating to breaches of R&Ws. *See* WF-BR Am. Compl. ¶ 186. While Plaintiffs call these appointments, which they acknowledge began in 2012, "ineffective," *see id.* ¶ 187, Wells Fargo diligently and consistently sought separate trustee appointments to eliminate any perceived conflicts of interest. *See* PL 2d Am. Compl. ¶ 98 (discussing suit instituted by Law Deb following its appointment).

## V.    PLAINTIFFS' TIA CLAIMS ARE LEGALLY DEFICIENT.

Plaintiffs' TIA claims should be dismissed. There is no applicable, express text in the statute suggesting that the TIA creates a private right or remedy. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164 (2008). Absent "evidence anywhere in the text to suggest that Congress intended to create a private right to enforce regulations," no such right may be implied. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). In addition, the TIA's terms

demonstrate the *absence* of intent by limiting trustees instead of conferring rights on investors. *See, e.g.*, 15 U.S.C. §§ 77ooo(a)-(c). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (internal quotation marks and citation omitted); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (same). The TIA's recognition of a limited private action for misleading statements to the SEC supports Wells Fargo's interpretation. *See* 15 U.S.C. § 77www. It shows that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Univs. Research Ass'n. v. Coutu*, 450 U.S. 754, 773 (1981).

To the extent Plaintiffs intend to rely on *Zeffiro v. First Penn. Banking & Trust Co.*, 623 F.2d 290, 302 (3d Cir. 1980), or *LNC Investments, Inc. v. First Fidelity Bank*, 935 F. Supp. 1333, 1338-40 (S.D.N.Y. 1996), those cases are inconsistent with the Supreme Court's most recent private right of action jurisprudence—*Stoneridge*, *Sandoval* and *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1387 (2015) (plurality) ("Our precedents establish that a private right of action under federal law is not created by mere implication")—which require express textual indicators of a private action and remedy.

In addition, the non-*BlackRock* Plaintiffs' TIA claims must be dismissed in whole or in part to the extent they relate to common law, PSA Trusts. *See* WF-RP Am. Compl. ¶ 3 n.1; WF-NCUA 2d Am. Compl. ¶ 439; WF-PL 2d Am. Compl. at 57 n.4; WF-CB Compl. at 51 n.5. PSA trusts do not fall within the TIA's scope. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of New York Mellon*, 775 F.3d 154, 169-70 (2d Cir. 2014).

Finally, the NCUA and Royal Park Plaintiffs' claims under TIA § 315(a) should be dismissed. *See* WF-NCUA 2d Am. Compl. ¶ 440; WF-RP Compl. ¶ 175. That provision merely permits indentures to limit trustees' pre-default duties "except for the performance of such duties

as are specifically set out in [the] indenture."  15 U.S.C. § 77ooo(a)(1).  It does not create any

new rights or duties beyond those in the indenture.  *See Ret. Bd. of the Policemen's Annuity &*

*Ben. Fund v. Bank of New York Mellon*, 914 F. Supp. 2d 422, 431.

## VI.     THE PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Streit Act claims should be dismissed for three reasons.  *First*, Plaintiffs allege

no violation of the Act.  As Judge Forrest has held, the only provision in the Streit Act that

purports to obligate a trustee, N.Y. Real Property Law § 126(1), "merely requires that 'the

instrument creating the trust shall contain the following provisions,' and that a trustee shall not

'accept a trust' without the provisions."  *Phoenix Light SF Ltd. v. U.S. Bank N.A.*, 2016 WL

1169515, at *10 (S.D.N.Y. Mar. 22, 2016) (quoting N.Y. Real Prop. Law § 126); *NCUA v. U.S.*

*Bank N.A.*, 2016 WL 796850, at *12 (S.D.N.Y. Feb. 25, 2016).  Judges Woods, Caproni and

Schofield agree.  *See, e.g.*, *Commerzbank AG v. HSBC Bank USA, N.A.*, No. 15 Civ. 10032

(LGS), 2016 BL 183580, at *3 (S.D.N.Y. June 08, 2016); *Royal Park Invs. SA/NV v. Bank of*

*New York Mellon*, 2016 BL 63471, at *12 (S.D.N.Y. Mar. 02, 2016) (dismissing Streit Act

claims applying same rationale); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 2015 WL

5710645, at *10-*11 (S.D.N.Y. Sept. 29, 2015) (same).  The same rationale applies here.

"Plaintiffs do not contend that defendants accepted a trust whose trust instrument lacked any

required provision."  *Phoenix Light v. U.S. Bank*, 2016 WL 1169515, at *10.

*Second*, as Judge Scheindlin has held, the Streit Act does not apply to RMBS, because the

Act "'does not apply to collateral trusts.'  Rather, it applies only to direct investments in real

estate mortgages."  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 599

(S.D.N.Y. 2015) (quoting *Prudence Realization Corp. v. Atwell*, 264 A.D. 546, 550, 35 N.Y.S.2d

1001, 1005 (1st Dep't 1942), *aff'd* 290 N.Y. 597, 48 N.E.2d 705 (1943).  The Streit Act extends

to "mortgage investments," which it defines as indebtedness "secured by a mortgage or

mortgages upon real property, or by a deed or deeds of trust, trust indenture or indentures or other evidence of [an] interest in real property." N.Y. Real Property Law § 125(1). Investors hold no interest in the real property, itself. *See BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d. Cir. 2012).

*Third*, and in any event, the Streit Act cannot apply to Indenture Trusts. As Judge Scheindlin has explained, "any trust that is qualified with the Securities and Exchange Commission ('SEC') and to which the TIA applies is exempt from the Streit Act. *Royal Park v. HSBC*, 109 F. Supp. 3d at 599 (citing N.Y. Real Prop. Law § 130-k). Accordingly, the Court should dismiss the Streit Act claims with respect to the Trusts listed on Ex. E.

## VII. ROYAL PARK'S AND NCUA'S DERIVATIVE CLAIMS SHOULD BE DISMISSED.

### A. Royal Park And NCUA Lack Standing To Assert Derivative Claims.

Royal Park's and NCUA's derivative claims should be dismissed for lack of standing. Derivative standing "has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court." *Halebian v. Berv*, 590 F.3d 195, 205 n.5 (2d Cir. 2009). Common law trusts, however, are not juridical entities that "can sue or be sued, and litigation involving a trust must be brought by or against the trustee in its capacity as such." *Tran v. Bank of New York*, No. 13 Civ. 580 (RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014); *Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 249 & n.1 (S.D.N.Y. 2001) ("[T]he Trust is not, under New York law, a suable juridical entity."); Bogert, *The Law of Trusts and Trustees*, §§ 1, 594, 712, 869 (trust cannot own anything; trustee is the juridical person who can sue or be sued with respect to trust assets).

NCUA's derivative standing claims fail for the additional reason that it has transferred its interests in the trusts at issue in a way that precludes its standing. *See* WF-NCUA 2d Am.

Compl. ¶¶ 26-40.  As Judge Forrest has held in a series of opinions, NCUA has no standing to

assert derivative claims on behalf of the NGN Trusts, because it assigned its rights in those

securities to a non-party, Bank of New York Mellon ("BNYM").  *See NCUA v. U.S. Bank Nat'l*

*Ass'n*, No. 14-cv-9928, 2016 WL 796850 (KBF), at *8-9 (S.D.N.Y. Feb. 25, 2016) ("*NCUA II*");

WF-NCUA 2d Am. Compl. Exs. B, C; *see also NCUA v. U.S. Bank Nat'l Ass'n*, No. 14-cv-9928

(KBF), 2015 WL 2359295 (S.D.N.Y. May 18, 2015) ("*NCUA I*") (same); *NCUA v. U.S. Bank*

*Nat'l Ass'n*, No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016) (ECF No. 141) ("*NCUA III*")

(same).  The governing agreements expressly provide that BNYM has "all of [NGN Trusts']

right, title and interest in and to . . . the Underlying Securities," including "*all present and future*

*claims*, demands, causes, and choses in action."  WF-NCUA 2d Am. Compl. Ex. B, at 5

(emphasis added); *see also* Exs. Q, R, S, T, U, V, W.  That language unambiguously released

"any rights [the NGN Trusts] otherwise may have had to commence litigation."  *Phoenix Light*

*SF Ltd. v. U.S. Bank Nat. Ass'n*, No. 14-cv-10116 (KBF), 2015 WL 2359358, at *2 (S.D.N.Y.

May 18, 2015) (finding that similar language released all claims).

    NCUA cannot derivatively pursue claims it has transferred.  *See* Fed. R. Civ. P. 23.1

(derivative action permissible to "enforce a right that the corporation or association may properly

assert"); *Waters v. Horace Waters & Co.*, 94 N.E. 602, 604 (N.Y. 1911) ("A plaintiff who asserts

a derivative cause of action must establish the existence of a cause of action in the party whose

rights are sought to be enforced.").  Indeed, NCUA is now "twice removed" from the certificates,

possessing only "a derivative claim based on a derivative claim."  *NCUA II*, 2016 WL 796850, at

*10.  No "principle [] allows the Court to ignore the first level of derivative claim."  *Id.* at *9.[7]

---

[7] Judge Scheindlin has stated in *dicta* that NCUA can pursue a derivative claim on behalf
of the NGN Trusts.  *See NCUA v. HSBC Bank USA, Nat'l Ass'n*, 117 F. Supp. 3d 392 (2015).

Wells Fargo respectfully submits that the dismissal of NCUA's claims on this ground should be with prejudice.  NCUA cannot merely substitute a party on the caption of its complaint to resolve the defect.  NCUA has never had standing; it was *never* the proper party to sue. NCUA's interests were transferred years before it filed suit.  *NCUA II* at *4-6.  Thus, Fed. R. Civ. P. 25, which allows for substitutions when an interest is transferred *during* the pendency of a case, does not apply.  *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998) ("In this case, Rule 25(c) does not apply because any transfer of interest in the Defendant Hospital to LSSI and HealthSouth occurred before the litigation began."); *Negrõn-Almeda v. Santiago*, 579 F.3d 45, 52, (1st Cir. 2009) ("Rule 25(c) governs substitution where a party to a lawsuit transfers an interest during the pendency of the lawsuit or after judgment has been rendered."); *Vincent v. The Money Store*, 915 F. Supp. 2d 553, 573 (S.D.N.Y. 2013) ("[N]othing in the language of Rule 25(c) or cases interpreting the Rule authorizes the use of Rule 25(c) to add a party retroactively to a previous action for purposes of pretending that it was a [party] in that action and that the action was in fact pending against it.").  There was never a valid cause of action into which the transferee can be substituted.  *See* Fed. R. Civ. P. 17(a)("An action must be prosecuted in the name of the real party in interest.").  The procedurally proper course is for the court to dismiss NCUA's complaint with prejudice and allow the party to whom the claims were assigned years ago to file its own, likely-time barred complaint, if it chooses to file one.

In any event, NCUA would be forced to amend the complaint as well because the new party's complaint must be substantively different from NCUA's current complaint.  NCUA has structured its claims as a "liquidating agent," not as the certificates' holder or owner.  *See* WF-NCUA 2d Am. Compl. at ¶¶ 27-40, 401-02, 412-13, 418-19, 425, 435-37 (asserting derivative

---

Judge Scheindlin did not, however, consider the impact of the assignment on NCUA's standing or decide the other arguments before Judge Forrest in *NCUA II* and advanced here.

claims and claims in capacity as "liquidating agent").  The Court should not allow further amendments due to NCUA's undue delay, the futility of any amendment and the prejudice to Wells Fargo.  NCUA filed its initial Complaint in this case on December 22, 2014.  (ECF No. 1)

On February 20, 2015, Wells Fargo identified NCUA's standing problems in a pre-motion letter, stating that "NCUA lacks standing," because its claims were "transferred as part of [a] re-securitization."   (ECF No. 24 at 3)  NCUA subsequently filed an amended complaint without addressing the standing issue, despite Judge Berman's admonition that if the motion to dismiss were to be successful, "the case would be over for that plaintiff" and the operative complaint would be dismissed "with prejudice."  Transcript of Proceedings before Judge Richard M. Berman at 3-4, BlackRock v. Wells Fargo, N.A., No. 14-cv-9371 (S.D.N.Y. Feb. 11, 2015) (ECF No. 42) (attached as Ex. EE).  Wells Fargo noted NCUA's standing defect in its memo of law in support of its motion to dismiss.  (ECF No. 34 at 26 n.15)

On May 18, 2015, Judge Forrest dismissed NCUA's claim in an almost identical RMBS trustee litigation filed against U.S. Bank on the very ground Wells Fargo had identified.  *See NCUA v. U.S. Bank Nat'l Ass'n, et al.*, No. 14-cv-9928 (KBF), 2015 WL 2359295 (S.D.N.Y. (May 18, 2015) ("*NCUA I*").  On February 23, 2016, over nine months later and in full view of Judge Forrest's decision, NCUA filed its Second Amended Complaint in this case.  It did not address the standing defect.  Two days later, Judge Forrest dismissed NCUA's amended complaint in the U.S. Bank case, citing the same standing defect at issue here.  *NCUA v. U.S. Bank Nat'l Ass'n, et al.*, No. 14-cv-9928, 2016 WL 796850 (KBF), at *8-9 (S.D.N.Y. Feb. 25, 2016) ("*NCUA II*").

On May 11, 2016, Judge Forrest denied NCUA's motion to amend and substitute a separate trustee in the U.S. Bank case, citing inexcusable delay.  The court reasoned that

"[p]utting aside the various substantive issues that such appointment would inject into this case, this Court made it ***perfectly clear a year ago*** that assertions of derivative standing were legally infirm and allowed one final amendment to address the deficiencies."  *NCUA III*, No. 14-cv-9928, at *3 (citing *NCUA I*) (emphasis supplied).  Here, too, NCUA's delay is inexcusable.  The same opinion that Judge Forrest viewed as making the standing defect "perfectly clear," the May 2015 opinion, has been known to NCUA for over a year and was in full view when NCUA filed its last amended complaint.  NCUA did not remedy the standing defect.

In the 13 months since the opinion was issued, NCUA has not sought leave to file an amended complaint against Wells Fargo.  Instead, it has engaged in further delay and required unnecessary briefing by filing a procedurally unheard-of motion to *confirm* its standing or, in the alternative, to substitute a party.  NCUA's persistent delay in attempting to redress its lack of standing is "inexcusable given the[se] previous opportunities to amend."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994) ("Valid reasons for denying leave to amend include undue delay . . . .").

In addition, allowing an amendment now would be futile.  The new party's claims will be time barred; its claims cannot relate back to NCUA's complaint as this case is not a valid preexisting action.  *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 229 (1st Dep't 2013), *aff'd* 25 N.Y.3d 581, 593 (2015) (observing that substitution would not cure time bar because the substituted party's claims would not relate back).  And, Wells Fargo would be prejudiced by any amendment.  This case has been pending for over 18 months.  Wells Fargo has now filed two motions to dismiss a case that was defective from the start.  If a substitution is allowed, Wells Fargo will have to file a third motion, including on the limitations issue, before it can finally resolve this case.  In the meantime, discovery is well underway, and Wells Fargo has

expended, and is expending, considerable resources directing discovery requests at NCUA. Many of those requests will have to be rewritten and redirected to the proper party. Wells Fargo would have to undertake new and additional discovery of the new plaintiff on issues like its knowledge and notice, its standing, the reasons for its delay in filing suit, and its injuries, if any. Accordingly, dismissal with prejudice of the Trusts identified in Ex. X is appropriate.

### B. Assuming Standing, Royal Park's And NCUA's Claims Are Not Derivative.

In all events, Royal Park's and NCUA's claims are direct, not derivative. The New York Appellate Division follows the Delaware Supreme Court's approach to distinguish derivative and direct actions. *See Yudell v. Gilbert*, 99 A.D.3d 108, 110, 949 N.Y.S.2d 380, 381 (1st Dep't 2012). Under it, a court should look to "[w]ho suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy" in determining whether an action is direct or derivative." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004); *Yudell*, 949 N.Y.S.2d at 384 .

Here, the investors, not the Trusts, suffered the alleged harm. Plaintiffs allege that Wells Fargo breached duties extending *only* to the investors. *See, e.g.*, WF-CB Compl. ¶¶ 151, 157. For example, Plaintiffs assert that Wells Fargo had a duty to notify them of uncured EODs, but any such duty would benefit only the investors, not the Trusts. *See, e.g.*, WF-BR Am. Compl. ¶ 170. Likewise, investors would receive the benefit of any recovery. No recovery would "belong" to the Trusts, as the Trusts are merely pass-through vehicles. *See* WF-BR Am. Compl. ¶ 47; *see also Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 467 n.1 (S.D.N.Y. 2001). Any damage award would be promptly disbursed entirely to investors in their ratable share. *See, e.g.*, Ex. Y at § 8.12(a). Citing these factors, Judge Nathan has concluded in a similar case that "[u]nder the *Tooley* test, Plaintiffs claims are not derivative, because investors, not the Trusts, suffered the alleged harm and would receive the benefit of

recovery." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 BL 29785, at *12 (S.D.N.Y. Feb. 03, 2016); *see also BlackRock v. U.S. Bank Nat'l Assoc.*, No. 14-cv-9401 (KBF), 2015 WL 2359319, at *5 (S.D.N.Y. May 18, 2015).

## VIII.   NCUA LACKS STANDING OVER ITS PURPORTED DIRECT CLAIMS.

As for the claims NCUA purports to bring directly—claims arising from certificates previously held by a "recently 'unwound'" NGN Trust, NCUA 2d Am. Compl. ¶ 26 n.2— NCUA likewise does not have standing.  *See* Ex. DD.  Standing "is assessed at the time of the original complaint, even if the complaint is later amended." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1202 n. 3 (Fed. Cir. 2005)); *see also Multistack LLC v. Arctichill Inc.*, No. 05-cv-3865 (PAC), 2006 WL 510506, at *4 (S.D.N.Y. Mar. 1, 2006).  NCUA admits that it did not hold the certificates at issue "[w]hen the original complaint was filed." NCUA 2d Am. Compl. ¶ 26 n.2.  Accordingly, "[t]he subsequent winding-down of one NGN trust does not . . . change the fact that at the time NCUA brought this suit, it did not have standing to pursue claims on behalf of the NGN trusts." *NCUA III*, No. 14-cv-9928, at *5-6.  Any "contrary ruling would permit a plaintiff to file a placeholder action, and hope that the intervening events were sufficient to confer standing upon him." *New York Bankers Ass'n, Inc. v. City of New York*, No. 13-7212 (KPF), 2014 WL 4435427, at *10 (S.D.N.Y. Sept. 9, 2014).

## IX.   COMMERZBANK'S CLAIMS ARE TIME BARRED.

Commerzbank's claims should be separately dismissed as time barred.  "When a nonresident sues on a cause of action accruing outside New York, C.P.L.R. § 202"—New York's borrowing statute—"requires the cause of action to be timely under the limitations period of both New York **and** the jurisdiction where the cause of action accrued.  This prevents nonresidents from shopping in New York for a favorable Statute of Limitations." *IKB Deutsche*

*Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 21 (2d Cir. 2015) (quoting *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999)) (emphasis supplied).  Where, as here, the "alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  *Global Fin. Corp.*, 715 N.E.2d at 484.  "If the injured party is a corporation, then the place of residence for the purposes of CPLR § 202 is traditionally the state of incorporation or the corporation's principal place of business."  *Baena v. Woori Bank*, No. 05 CIV. 7018 (PKC), 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006).  Where a cause of action is asserted by virtue of an assignment and accrued to the assignor, the assignor's jurisdiction determines the limitations period.  *See In re Gluck v. Amicor Inc.*, 487 F. Supp. 608, 613 (S.D.N.Y. 1980) (place of accrual based on the assignor's residency).

Commerzbank, a German entity, asserts its own claims as well as claims assigned to it by Dresdner Bank, a German entity; Eurohypo AG New York Branch, a German entity; Barrington II CDO Ltd., a Cayman Islands entity; and Palmer Square 3 Limited, an Irish entity.  WF-CB Compl. ¶¶ 16-17.  For at least Commerzbank's own claims and Dresdner Bank and Eurohypo's assigned claims, the injuries occurred, and the claims accrued, in Germany.  *See* Ex. FF.

New York applies a six-year statute of limitations for breach-of-contract actions.  *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 599 (2015).  German Civil Code § 195 provides a ***three-year*** limitations period for German claims, with the limitations period commencing after December 31 of the year the claims accrued.[8]  *IKB*, 634 F. App'x at 22;

---

[8] The Court's consideration of the expert affidavit does not convert this motion to one for summary judgment.  Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law."

Expert Aff. ¶ 12-13, 21-22.[9]  Because Commerzbank filed its initial complaint on December 24,

2015, any claim that accrued before January 1, 2012, would be time barred.  Under German law,

moreover, Commerzbank's claims accrued when it—or the German claims' assignors—had

"knowledge of the facts necessary to commence an action in Germany with an expectation of

success or some prospect of success," even if the prospects of success were uncertain.  *IKB*, 634

F. App'x at 22.  The allegedly injured party "need not know all the relevant details or have

conclusive proof available; knowledge of the factual circumstances underlying the claim is

sufficient."  *Id.*; Expert Aff. ¶ 23-27.

Here, Commerzbank has affirmatively alleged that it had knowledge of Wells Fargo's

alleged breaches prior to January 1, 2012.  Commerzbank has pled that, at the time it "divested

itself of the Certificates" listed on Exhibit B to the Complaint in 2011, ***"it was apparent that***

***Wells Fargo had breached its duties and would not take steps to remedy its failures*****."**  WF-CB

Compl. ¶ 132 (emphasis added).  Exhibit B to the Complaint shows that Commerzbank

commenced those sales, and thus was aware of the asserted breach, as of **November 3, 2011**.

*See* WF-CB Compl. Ex. B.  That is sufficient for a claim to accrue under German law.  Expert

Aff. ¶ 36-41.  Accordingly, the claims with respect to the 15 trusts in Ex. FF, with the exception

of ISIN codes that were allegedly assigned from Barrington II, according to WF-CB Compl. Ex.

B, should be dismissed.  *See* Ex. FF.

In addition, in 2011, Commerzbank filed suit against several rating agencies in

connection with RMBS.  *See* Ex. CC (7th Am. Compl., *Abu Dhabi Comm. Bank v. Morgan

Stanley & Co., Inc.*, No. 1:08-cv-07508 (S.D.N.Y. filed Feb. 18, 2011)).  In that action, it raised

---

[9] As used herein, "Expert Affidavit" or "Expert Aff." refers to the Affidavit of Dorothee
Maye in Support of Defendant Wells Fargo's Motion to Dismiss the Complaint and exhibits
thereto, which are annexed as exhibits to the Sidman Declaration filed in the *CommerzBank* case.

many of the very same allegations of R&W claims as it does in this case.  For example,

Commerzbank claimed that:

- The defendants concealed the lending practices that had been used to generate the underlying mortgages, including stated income loans where the stated income was unreasonably high as compared to the stated job title.  These were referred to in the industry as "liar loans."  The nonprime RMBS also included mortgages based on artificially inflated appraisals and loans to nonprime borrowers with "silent seconds," where the down payment was in reality another loan.  These lending improprieties dramatically increased the probability of delinquencies, defaults, foreclosures and, ultimately, losses.  *Id.* ¶ 83.

- "Whether the mortgage loans were categorized as to "prime" or "nonprime" borrowers, many of the mortgages were granted in amounts not justified by the borrowers' income.  Many borrowers were qualified under stated income applications (usually reserved for self-employed individuals who could not provide Form W-2s) even though such borrowers were wage earners. Many borrowers qualified under pay-option adjustable rate mortgages ("ARMs") which would, after the initial teaser period, adjust to such high payment amounts that it would be impossible for the borrowers to make the payments.  The SIV's assets undermined its high credit ratings."  *Id.* ¶ 84.

- "Throughout 2005 and 2006, New Century was forced to buy back an increasing volume of its loans because those loans were in breach of the representations and warranties New Century made to buyers in securitization transactions."  *Id.* ¶ 88

The Court can take judicial notice of its own docket and publicly filed complaints.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) ("Pursuant to Fed. R. Evid. 201(b) , we take judicial notice of the Midway complaint as a public record.").[10]  Taken together, Commerzbank's allegations demonstrate that Commerzbank had knowledge "of the facts necessary to commence an action in Germany"—that is, it had knowledge of the servicing and R&W issues that it claims Wells Fargo failed to disclose.  *IKB*, 634 F. App'x at 22.  As Commerzbank was on notice well before January 1, 2012, of the factual circumstances underlying its claims against Wells Fargo,

---

[10] In *IKB*, the Second Circuit considered a complaint filed by IKB in unrelated litigation in considering its knowledge for limitations purposes without converting the motion to dismiss into one for summary judgment.  *See* 634 F. App'x at 21; Fed. R. Civ. P. 44.1.

its December 2015 filing was untimely for the claims asserted on its own behalf and as assignee of Dresdner Bank and Eurohypo's claims.

To the extent Commerzbank intends to argue that United Kingdom law should apply, that argument is misplaced. In an apparent attempt to avoid German law, Commerzbank repeatedly alleges that its London branch acquired the certificates at issue. *See* WF-CB Compl. ¶¶ 16-20. But "it is well established that a 'branch or agency of a bank is not a separate entity" for accrual purposes. *HSN Nordbank AG v. RBS Holdings USA Inc.*, No. 13 CIV. 3303 PGG, 2015 WL 1307189, at *5 (S.D.N.Y. Mar. 23, 2015) (citation omitted); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 51 (2d Cir. 2012) (holding branch is not distinct entity with standing separate from that of its headquarters). Thus, Commerzbank's London branch is not a plaintiff in this litigation.

Courts have routinely applied this rule in cases involving German banks. *See, e.g., HSN Nordbank*, 2015 WL 1307189, at *5 (holding claims by German Bank's Luxembourg "division" accrued in Germany); *Deutsche Zentral-Genossenschaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025, 2013 WL 6667601, at *5-7 (S.D.N.Y. Dec. 17, 2013) (holding that German law applied even though German Bank's New York branch was injured) (emphasis in original) (citation omitted); *Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp. (In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.)*, Nos. 2:11-ML-02265- MRP, 13-CV-01118, 2014 WL 4162382, at *3 (C.D. Cal. June 18, 2014) (same); *Deutsche Zentral-Genossenschaftsbank v. Citigroup,* 998 N.Y.S.2d 306, 2014 WL 4435991, at *1 (same); *Landesbank v. Barclays Bank PLC*, No. 652697/2012, 2014 WL 3738082, at *1 (N.Y. Sup. Ct. N.Y. Cnty. July 28, 2014) (same). Therefore, the branch through which Commerzbank acted is irrelevant.

Finally, if Commerzbank argues that its claims are governed exclusively by New York law, it must account for New York General Obligation Law § 13-107 with respect to its "Sold Certificates," which are the vast majority of certificates listed on Complaint Exhibit B. Commerzbank admits that it no longer owns these certificates. *See* WF-CB Compl. ¶ 3. Section 13-107 provides that "a transfer of any bond shall vest in the transferee all claims or demands of the transferrer." N.Y. Gen. Oblig. Law § 13-107. Consequently, Commerzbank likely divested itself of the right to pursue claims under the Sold Certificates.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Wells Fargo's Motion to Dismiss should be granted in its entirety with prejudice.

Dated: July 8, 2016

JONES DAY

By: */s/ Howard F. Sidman*

Jayant W. Tambe, Esq.
Howard F. Sidman, Esq.
Jason Jurgens, Esq.
JONES DAY
250 Vesey Street
New York, NY 10281
Tel:    (212) 326-3939
Fax:    (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
jjurgens@jonesday.com

Traci L. Lovitt, Esq.
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel:    (617) 449-6900
Fax:    (617) 449-6999
tlovitt@jonesday.com

*Attorneys for Wells Fargo Bank, N.A.*