**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al.,** | X : : : |
| **Plaintiffs,** | : : |
| -against- | : : |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | : : : |
| **Defendant,** | : : : |
| -and- | : : |
| **The Trusts Identified in Exhibit 1,** | : : |
| **Nominal Defendants.** | : : : X |

Case No. 1:14-cv-9371-KPF-SN

(Additional Case Captions on Following Pages)

**MEMORANDUM OF LAW RESPONDING TO COORDINATED PLAINTIFFS'**
**RULE 72 OBJECTIONS AND MOTION TO VACATE MAGISTRATE JUDGE**
**NETBURN'S DECEMBER 18, 2017 & JANUARY 2, 2018 ORDERS**

JONES DAY
250 Vesey Street
New York, NY 10281
Tel:     (212) 326-3939
Fax:     (212) 755-7306

Attorneys for Defendant
Wells Fargo Bank, N.A.,
as Trustee

**ROYAL PARK INVESTMENTS SA/ NV,**
**Individually and on Behalf of All Others**
**Similarly Situated**

               **Plaintiffs,**

    -against-

**WELLS FARGO BANK, N.A., as Trustee,**

               **Defendant.**

Case No. 1:14-cv-09764-KPF-SN

---

**NATIONAL CREDIT UNION**
**ADMINISTRATION BOARD, as**
**Liquidating Agent of U.S. Central Federal**
**Credit Union, Western Corporate Federal**
**Credit Union, Members United Corporate**
**Federal Credit Union, Southwest**
**Corporate Federal Credit Union, and**
**Constitution Corporate Federal Credit**
**Union, derivatively and in its own right,**

               **Plaintiffs,**

    -against-

**WELLS FARGO BANK, NATIONAL**
**ASSOCIATION,**

               **Defendant,**

    -and-

**NCUA GUARANTEED NOTES TRUST**
**2010-R1,**
**NCUA GUARANTEED NOTES TRUST**
**2010-R2,**
**NCUA GUARANTEED NOTES TRUST**
**2010-R3,**
**NCUA GUARANTEED NOTES TRUST**
**2011-R2,**
**NCUA GUARANTEED NOTES TRUST**
**2011-R4,**
**NCUA GUARANTEED NOTES TRUST**
**2011-R5,**

Case No. 1:14-cv-10067-KPF-SN

**NCUA GUARANTEED NOTES TRUST**
**2011-M1,**

           **Nominal**
           **Defendants.**

**PHOENIX LIGHT SF LIMITED, et al.,**
           **Plaintiffs,**

   -against-

**WELLS FARGO BANK, N.A.,**

           **Defendant.**

Case No. 1:14-cv-10102-KPF-SN

**COMMERZBANK AG,**

           **Plaintiff,**

   -against-

**WELLS FARGO BANK, N.A.,**

           **Defendant.**

Case No. 1:15-cv-10033-KPF-SN

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .......................................................................................................... 3

STANDARD OF REVIEW ........................................................................................... 8

ARGUMENT ............................................................................................................... 10

    I.    **WELLS FARGO IS ENTITLED TO ARGUE AND PROVE THAT IT LACKED KNOWLEDGE OF R&W BREACHES AND EODS.** ........................................... 10

        A.  Wells Fargo Has Not Impliedly Waived Attorney-Client Privilege. .......................... 10

            1.  Implied waivers require actual reliance on the privileged communication or the affirmative invocation of a "good faith" defense—neither of which is present here. ........................................................................................................... 10

            2.  Plaintiffs unlimited view of "fairness" is legally erroneous. ............................... 13

            3.  Plaintiffs' specific "fairness" arguments are inapposite. ..................................... 14

            4.  Wells Fargo has not put the attorney-client relationship at issue by seeking counsel's opinion. ............................................................................................... 17

        B.  Wells Fargo Should Be Permitted To Argue That It Lacked Knowledge Of EODs And R&W Breaches. ............................................................................................. 18

    II.    **JUDGE NETBURN'S JANUARY ORDER WAS NOT CLEARLY ERRONEOUS.** ...................................................................................................... 20

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

Page

CASES

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
    12 Civ. 6808 (KMK) (PED), 2016 WL 1060336 (S.D.N.Y. Mar. 11, 2016) .........................19

*Anwar v. Fairfield Greenwich Ltd.*,
    982 F. Supp. 2d 260 (S.D.N.Y. 2013).....................................................................................16

*Arista Records LLC v. Lime Group*
    LLC, No. 06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011).....................26

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
    727 F. Supp. 2d 256 (S.D.N.Y. 2010).....................................................................................21

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 90 Civ. 7811 (AGS), 1994 WL 510043 (S.D.N.Y. Sept. 16, 1994) ..........................24, 25

*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*,
    257 F. Supp. 2d 751 (S.D.N.Y. 2003)......................................................................................25

*City of N.Y. v. FedEx Ground Package Sys., Inc.*,
    No. 13 Civ. 9173 (ER), 2017 WL 633445 (S.D.N.Y. Feb. 14, 2017) ....................................16

*Cohen v. City of New York*,
    Nos. 05-CV-6780 (KMK) (JCF), 05-CV-7026 (KMK) (JCF), 05-CV-8453
    (KMK) (JCF), 2007 WL 2789272 (S.D.N.Y. Sept. 25, 2007)................................................15

*Covington v. Kid*,
    No. 94 Civ. 4234 (WHP), 1999 WL 9835 (S.D.N.Y. Jan. 7, 1999) .......................................15

*Eisai Ltd. v. Dr. Reddy's Labs., Inc.*,
    406 F. Supp. 2d 341 (S.D.N.Y. 2005)......................................................................................16

*Hearn v. Rhay*,
    68 F.R.D. 574 (E.D. Wash. 1975)............................................................................................20

*In re Adelphia Commc'ns Corp.*,
    No. 02-41729 (REG), 2007 WL 601452 (Bankr. S.D.N.Y. Feb. 20, 2007) ...........................25

*In re Buspirone Antitrust Litig.*,
    208 F.R.D. 516 (S.D.N.Y. 2002) ...........................................................................26

*In re County of Erie*,
    546 F.3d 222 (2d Cir. 2008)........................................................................ *passim*

*In re Namenda Direct Purchaser Antitrust Litig.*,
    2017 WL 2226591 (S.D.N.Y. May 19, 2017) .......................................................20

*Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*,
    No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010).....................18

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    No. 09 Civ. 3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012) .............................................19

*McCulloch v. Town of Milan*,
    No. 07 Civ. 9780 (LPA) (RLE), 2009 WL 4857994 (S.D.N.Y. Dec. 11, 2009) ....................15

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*,
    258 F.R.D. 95 (S.D.N.Y. 2009) .............................................................................26

*Pritchard v. County of Erie*,
    2007 WL 3232096 (W.D.N.Y. Oct. 31, 2007) ...............................................................20, 21

*Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*,
    2 F. Supp. 3d 499 (S.D.N.Y. 2014)...........................................................................16

*Regeneron Pharms., Inc. v. Merus B.V.*,
    144 F. Supp. 3d 530 (S.D.N.Y. 2015).......................................................................25

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994).........................................................................19, 22

*Small v. Sec'y of Health & Human Servs.*,
    892 F.2d 15 (2d Cir. 1989)......................................................................................27

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*,
    924 F. Supp. 2d 508 (S.D.N.Y. 2013)..........................................................................27

*Trouble v. Wet Seal, Inc.*,
    179 F. Supp. 2d 291 (S.D.N.Y. 2001)........................................................................25

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)............................................................................19, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b) ................................................................................................28

Fed. R. Civ. P. 72(a) ..........................................................................................15, 27

## PRELIMINARY STATEMENT

In their latest effort to avoid proving their case on a loan-by-loan and trust-by-trust basis, Plaintiffs now attempt to preclude Wells Fargo from marshalling a loan-by-loan defense.  Wells Fargo intends to prove that it lacked knowledge of Events of Default ("EODs") and did not discover representation and warranty ("R&W") breaches based on the facts and data it had at the relevant time.  Clinging to the hope that they can rely on an amorphous "totality of evidence" standard instead of loan-specific evidence (Obj. Br. 2), Plaintiffs seek to preclude Wells Fargo's proof on the ground that Wells Fargo "shielded" supposedly relevant evidence of its knowledge by asserting attorney-client privilege.  In the alternative, Plaintiffs seek a finding that Wells Fargo has impliedly waived privilege by putting its "knowledge" at issue.

Plaintiffs, however, have repeatedly tried and failed to challenge the propriety of Wells Fargo's privilege assertions, and they now ignore the evidence that Wells Fargo was ordered to produce by Judge Netburn.  Since November 2016, Plaintiffs have repeatedly challenged Wells Fargo's assertion of privilege with respect to the very databases, spreadsheets and emails containing and reflecting Wells Fargo's counsel's legal opinions and advice at issue here.  In March of 2017, after carefully reviewing sworn declarations, deposition testimony, sample communications and database excerpts, Judge Netburn concluded that the *factual* information Wells Fargo had provided to counsel was not privileged but that communications revealing counsel's *opinion* were privileged.  *See* BR ECF No. 373 & 374.  Plaintiffs did not object to these decisions or argue that Wells Fargo had impliedly waived attorney-client privilege. Instead, on June 29, 2017, Royal Park requested a pre-motion conference to discuss whether Wells Fargo had "waived its right to assert an advice of counsel defense" by successfully asserting privilege.  RP ECF No. 361 at 1.  On July 13, 2017, Judge Netburn denied Royal Park's request, reasoning that "Wells Fargo has not asserted such a defense in its Answer" and had "no

intention of asserting the defense."  RP ECF No. 371 at 1.  Plaintiffs did not object to the order

or argue that Wells Fargo was necessarily inserting counsel's advice into the litigation.

Instead, apparently dissatisfied with Judge Netburn's orders, Plaintiffs asked *this* Court to

find that Wells Fargo had waived its attorney-client privilege by putting its "knowledge" of

R&W breaches and EODs at issue.  In the alternative, Plaintiffs requested an order precluding

Wells Fargo from arguing that it lacked such knowledge.  This Court ordered Plaintiffs to present

the issue to Judge Netburn given its "evidentiary" nature.  In an order dated December 18, 2017

(the "December Order"), Judge Netburn denied Plaintiffs' request, reasoning that Wells Fargo

"is not relying on privileged material for its defense" and that Plaintiffs could demonstrate Wells

Fargo's knowledge, if any, from the "hundreds of thousands of documents, including Wells

Fargo's relevant databases," that had been produced pursuant to the Court's prior privilege

orders.  BR ECF No. 634 at 3-4.

Judge Netburn's ruling is clearly correct.  Wells Fargo has produced the factual

information that it sent to outside counsel as required by the Court's privilege orders.  And Wells

Fargo has produced millions of pages of documents and provided deposition testimony

concerning the other factual information that it used to determine its obligations under the

governing agreements ("GAs") and how it responded to the facts known to it.  Plaintiffs now

seek to uncover outside counsel's opinion of Wells Fargo's legal obligations, which they do not

need to demonstrate Wells Fargo's knowledge.  There is also no basis for an implied waiver.

Wells Fargo will not rely on privileged information at trial, and it has not pled an advice of

counsel or state of mind defense.  Plaintiffs' contrary arguments are impermissible collateral

attacks on Judge Netburn's privilege orders to which Plaintiffs never objected.

Seeking to create a false illusion of "unfairness" in Judge Netburn's rulings, Plaintiffs also object to the Court's January 2, 2018 order (the "January Order"), which compelled *Plaintiffs* to supplement their responses to a contention interrogatory.  Specifically, Wells Fargo asked Plaintiffs to identify the date on which *Plaintiffs contend* that Wells Fargo purportedly knew of EODs and R&W breaches.  Plaintiffs now claim that they cannot fairly answer this interrogatory due to Wells Fargo's withholding of privileged information.  Judge Netburn has reviewed this interrogatory three times, and until now, Plaintiffs never argued that it was "unfair" due to the Court's many, earlier privilege decisions.  In reality, the January Order does not "compound[]" any purported unfairness to Plaintiffs.  The interrogatory asks for Plaintiffs' own contention of when Wells Fargo acquired the relevant knowledge, not what Wells Fargo actually knew or what its legal counsel viewed as Wells Fargo's duties.  As Judge Netburn correctly ruled, Plaintiffs must come forward with trust-specific and loan-specific information, including the date on which Wells Fargo knew of or was "willfully blind" to R&W breaches, and they should be able to state today what they will contend that date is.  Accordingly, the Objection should be denied.

## BACKGROUND

Previous Privilege Disputes.  The current dispute has its origin in a series of discovery orders issued by Judge Netburn beginning in March 2017.  In November 2016 and again in February 2017, Plaintiffs challenged Wells Fargo's designation of its Issue Management Module ("IMM") database as privileged.  The IMM database contains information regarding issues monitored by Wells Fargo's Default and Restructuring Group ("DRG"), including issues relating to trusts at issue in these cases.  *See* BR ECF No. 373 at 2-3.  During their prior motion practice, Plaintiffs argued that the database contained factual information generated by non-lawyers and thus was not privileged.  On March 9, 2017, Judge Netburn reviewed excerpts from IMM

3

database reports, as well as documents regarding its creation and purpose, and concluded that the IMM database "consists of both privileged legal advice and attorney impressions, and non-privileged factual descriptions of the issues." *Id.* at 4.  The Court ordered Wells Fargo to disclose the non-privileged portions of the IMM database, in particular its factual data. *Id.* at 4-5.

The same day, Judge Netburn issued an opinion with respect to Wells Fargo's communications with counsel.  BR ECF No. 374.  The Court was "sensitive to the possibility that, to mitigate exposure and liability as a result of its business practices, entities such as Wells Fargo may have engaged counsel in decisions that were previously made by business people without the advice of counsel." *Id.* at 5.  The Court thus conducted individualized reviews of the documents and required Wells Fargo to produce all documents that served a business purpose, not a legal purpose.  For example, considering the same communications between DRG members and Wells Fargo's counsel that Plaintiffs cite (*see* Obj. Br. 3-4, 10-11, 15, 17; BR ECF No. 374 at 3-5), Judge Netburn held that Wells Fargo was requesting legal advice and that the legal advice was privileged.  BR ECF No. 374 at 6-11 (discussing specific exemplars).  But materials documenting servicer performance, repurchase demands and other escalated issues were factual and had to be produced. *Id.* at 6.

In addition, on March 24, 2017, Judge Netburn required Wells Fargo to produce in redacted form documents created entirely by outside counsel "to analyze [Wells Fargo's] obligations under the governing agreements after downgrades of Ocwen's servicer ratings."  BR ECF No. 390 at 3.  The documents contained counsel's legal opinion and analysis, "the actions Wells Fargo took in response to counsel's legal advice," and purely factual information identifying the trusts at issue. *Id.*  The Court held that the first two categories of information

were privileged, but the third was not.  *Id.* at 3, 4; *see also* Obj. Br. 15 (discussing these documents).  The Court also required Wells Fargo to produce the repurchase and loan-file review information Wells Fargo collected for legal counsel.  *Id.* at 5.

Finally, on July 7, 2017, Royal Park asked Judge Netburn to find that Wells Fargo had "waived its right to assert an advice of counsel defense."  RP ECF No. 366 at 1.  On July 13, 2017, Judge Netburn held that "Wells Fargo has not asserted such a defense in its Answer, and it has represented in connection with Royal Park's application that it 'has no intention of asserting the defense in response to the operative complaint.'"  RP ECF No. 371 at 1.  Accordingly, any opinion would have been impermissibly "advisory."  *Id.* at 2.

Plaintiffs did not object to *any* of these orders.  In addition, they never argued that Wells Fargo had somehow impliedly waived attorney-client privilege when these privilege disputes were before Judge Netburn more than one year ago.  They did not argue that Wells Fargo's attorney-client communications had been necessarily put at issue in the case.  Plaintiffs never claimed that the privileged information was necessary for them to prove their case.

Nor could they.  Wells Fargo has produced millions of pages of documents, as well as information stored in its databases.  It has produced the relevant, non-privileged portions of its IMM and "Repurchase" databases, which track trust-specific matters of concern and repurchase-related correspondence.  Wells Fargo has also produced all relevant documents referenced in the "Repurchase" database, such as loan file requests, notices of alleged breaches, and Wells Fargo's responses.  Wells Fargo has provided Plaintiffs access to its "CTSLink" web portal, the current repository for trust-specific EOD notices and investor communications.  Plaintiffs have deposed 30 Wells Fargo witnesses, including corporate witnesses.  The deposition topics included: "Wells Fargo's analysis and/or understanding, if any, of any internal discovery and/or external

5

notice of actual or potential breaches of [R&Ws]," and "Wells Fargo's analysis and/or understanding, if any, of actual or potential Servicer breaches and/or [EOD]."  *See* 6/15/2017 Hearing Tr. at 6-8; Ex.[1] 1 (Amended 30(b)(6) Deposition Notice).  Plaintiffs know when Wells Fargo sought counsel's advice on the GAs' meaning, the factual information Wells Fargo provided to counsel, and Wells Fargo's actual conduct thereafter.  Wells Fargo withheld only counsel's mental impressions and legal advice, which Judge Netburn correctly found served purely a legal, not a business, function after reviewing it.

Previous Interrogatory Disputes.  The Plaintiffs have separately challenged Wells Fargo's interrogatories regarding the date on which Wells Fargo purportedly learned of R&W breaches. Plaintiffs initially objected to the interrogatory on the ground that it was "overbroad, premature, and seeking irrelevant information."  RP ECF No. 353 at 2.  On June 21, 2017, Judge Netburn narrowed the interrogatory (as modified by the Court, "Interrogatory 5") to eliminate a description of "how" R&W breaches were discovered and overruled Plaintiffs' objections.[2]  *Id.* at 3-5.  With the exception of BlackRock, the Plaintiffs moved for reconsideration of the June 21 order on the ground that they could not answer Interrogatory 5 until after expert discovery.  *See* RP ECF No. 373 at 2-3.  The Court affirmed the June 21 order but instructed Plaintiffs to answer Interrogatory 5 for a sample of 100 loans.  *Id.* at 4.

---

[1] Citations to "Ex. __" are references to exhibits to the Declaration of Jayant Tambe, submitted herewith.

[2] Interrogatory 5 is as follows: "As to each R&W breach that You contend Wells Fargo discovered, State and Describe the facts and evidence supporting that contention, Including Identifying each Loan in each Covered Trust that you contend is evidence of an R&W Breach, the nature of the particular R&W breach(es) You contend are evidenced by each such Loan (with references to the particular relevant R&W(s) in the relevant GA), [and] *the date on which You contend the Trustee discovered the R&W Breach identified[.]*"  BR ECF No. 492-1, 493 (emphasis supplied).

The Current Discovery Dispute.  Despite Judge Netburn's unobjected-to rulings and Wells Fargo's extensive production, Plaintiffs filed a pre-motion conference request with this Court on October 31, 2017, claiming for the first time that Wells Fargo's privilege assertions precluded Plaintiffs from assessing Wells Fargo's knowledge of R&W breaches and EODs.  BR ECF No. 603 at 1.  The Court endorsed Plaintiffs' memo but ordered them to refile it with Judge Netburn, finding the requests "substantially evidentiary."  *Id.* at 5.

On December 18, 2017, Judge Netburn denied Plaintiffs' implied waiver motion, holding that "Wells Fargo is not relying on privileged material for its defense" and that it was "not invoking an advice of counsel defense" or otherwise putting the attorney-client relationship at issue.  BR ECF No. 634 at 3-5.  The Court rejected Plaintiffs' argument that Wells Fargo had put its attorney-client communications at issue simply by denying knowledge of R&W breaches and EODs, reasoning that "Plaintiffs must establish what Wells Fargo knew (or discovered) and not Wells Fargo's state of mind concerning whether its legal obligations were triggered."  *Id.* at 3-4.  Knowing *exactly* what it had ordered Wells Fargo to produce, and what Wells Fargo had produced, the Court further observed:  "Plaintiffs have received hundreds of thousands of documents, including Wells Fargo's relevant databases, and deposed dozens of witnesses.  It is from this information—the facts and data—that Plaintiffs must prove their claims; they are not entitled to the legal advice Wells Fargo received based on those facts and data."  *Id.* at 4.  The Court concluded that "equitable fairness cannot be used as a substitute for the lack of the essential element of reliance on privileged communications."  *Id.* at 5 (citation omitted).

Separately, on October 17, 2017, Wells Fargo requested an order compelling Plaintiffs to supplement their Interrogatory 5 responses, which were deficient and evasive with respect to the date on which Wells Fargo purportedly discovered R&W breaches.  *See* BR ECF No. 649 at 1.

Plaintiffs responded in relevant part that they were not required to identify exact dates under a theory of "willful blindness." RP ECF No. 413 at 2.

On January 2, 2018, the Court ordered Plaintiffs to "identify the date on which it contends Wells Fargo discovered each R&W breach." BR ECF No. 649 at 3-4. The Court held that it had previously ruled Interrogatory 5 appropriate without objection and that "[e]ven under a willful blindness theory, there must be a moment when Plaintiffs claim that Wells Fargo's failure to act constituted a breach of the governing agreements." *Id*. at 3. For the reasons articulated by Judge Netburn and those herein Plaintiffs' Objection should be denied.

## STANDARD OF REVIEW

This Court should review Judge Netburn's December and January Orders (collectively, the "Orders") under the clearly erroneous standard applicable to "non-dispositive" orders, *see* Fed. R. Civ. P. 72(a), as opposed to the *de novo* review applicable to "dispositive" orders that Plaintiffs advocate (Obj. Br. 8). *See McCulloch v. Town of Milan*, No. 07 Civ. 9780 (LPA) (RLE), 2009 WL 4857994, at *1 (S.D.N.Y. Dec. 11, 2009). As this Court has previously recognized, "[p]retrial discovery motions are considered non-dispositive and are reviewed . . . [pursuant to the] clear error standard." BR ECF No. 550 at 13 (internal quotation marks and citation omitted).

"A dispositive matter is one that disposes of, or terminates, a claim or defense." *Covington v. Kid*, No. 94 Civ. 4234 (WHP), 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7, 1999). Here, Plaintiffs did not argue for judgment on a claim, and Judge Netburn did not consider the merits of, or dispose of, any claim. The January Order resolves a dispute over the adequacy of Plaintiffs' interrogatory responses—a classic discovery order that Plaintiffs do not even pretend is "dispositive." *See Cohen v. City of New York*, Nos. 05-CV-6780 (KMK) (JCF), 05-CV-7026 (KMK) (JCF), 05-CV-8453 (KMK) (JCF), 2007 WL 2789272, at *3 (S.D.N.Y. Sept. 25, 2007);

*City of N.Y. v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at

*3 (S.D.N.Y. Feb. 14, 2017).  The December Order considers whether Wells Fargo should be

required to produce privileged documents under an implied waiver theory or forgo denying its

knowledge of R&W breaches and EODs.  This is ultimately an argument about document

production and evidence, which is reviewed under the clear error standard.  *See Eisai Ltd. v. Dr.*

*Reddy's Labs., Inc.*, 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005) ("Discovery rulings, including

those regarding privilege issues, are nondispositive matters subject to [the clearly erroneous or

contrary to law] standard of review.").

Seeking to avoid clear-error review, Plaintiffs claim that the Orders involve "legal

conclusions."  *See* Obj. Br. 8.  But as this Court recognized when ordering Plaintiffs to appear

before Judge Netburn, Plaintiffs' arguments "are substantially evidentiary."  *See* BR ECF No.

603 at 5.  In addition, the mere presence of a legal question does not convert a discovery issue

into a dispositive one.  *See* BR ECF No. 550 at 14-16 (rejecting Plaintiffs' argument that

sampling decision should be reviewed *de novo*); *Progress Bulk Carriers v. Am. S.S. Owners Mut.*

*Prot. & Indem. Ass'n*, 2 F. Supp. 3d 499, 503 (S.D.N.Y. 2014) (arbitration clause's validity

reviewed for clear error); *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260 (S.D.N.Y.

2013) (choice of law reviewed for clear error).  Plaintiffs' alternative suggestion that the Court

"fail[ed] to address" whether Wells Fargo should be precluded from arguing a lack of knowledge

(Obj. Br. 8) is simply untrue.  The Court correctly denied Plaintiffs' "motion for preclusion or

waiver" on the same grounds as it denied Plaintiffs' implied waiver argument.  BR ECF No. 634

at 3-5.

Plaintiffs cannot satisfy the clear error standard.  "An order is clearly erroneous if the

reviewing court is left with the definite and firm conviction that a mistake has been committed."

BR ECF No. 550 at 13 (internal quotation marks and citations omitted).  "This is a highly

deferential standard, and the party seeking to overturn a magistrate judge's decision thus carries

a heavy burden."  *Id.* (internal quotation marks and citations omitted).  In all events, the Orders

are correct and would satisfy the *de novo* standard.

## ARGUMENT

### I.  WELLS FARGO IS ENTITLED TO ARGUE AND PROVE THAT IT LACKED KNOWLEDGE OF R&W BREACHES AND EODS.

#### A.  Wells Fargo Has Not Impliedly Waived Attorney-Client Privilege.

Judge Netburn correctly ruled that Wells Fargo has not impliedly waived privilege,

because:  (i) "Wells Fargo is not relying on privileged material for its defense"; (ii) it is not

"invoking an advice of counsel" or any other state of mind defense; and (iii) "Plaintiffs have

received thousands of documents, including Wells Fargo's relevant databases," which

demonstrate what Wells Fargo knew and when."  BR ECF No. 634 at 3-5.  There is no implied

waiver on these facts.

> **1.  Implied waivers require actual reliance on the privileged communication or the affirmative invocation of a "good faith" defense—neither of which is present here.**

Nearly a decade ago, in *In re County of Erie*, 546 F.3d 222, 227-229 (2d Cir. 2008), the

Second Circuit recognized that implied waiver of attorney-client privilege can be found in only

three instances, because waiver rules "possess the potential to weaken attorney-client trust."  *Id.*

at 228 (internal quotation marks and citations omitted).  Specifically, implied waiver exists:

"when a client testifies concerning portions of the attorney-client communication, . . . when a

client places the attorney-client relationship directly at issue, . . . and when a client asserts

reliance on an attorney's advice as an element of a claim or defense."  *Id.* at 228 (alterations and

ellipses in original; quotation marks and citation omitted).  "The key to a finding of implied

waiver in the third instance," the Court explained, "is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.* (emphasis in original). The Second Circuit ultimately held that the petitioners in that case—county officials claiming qualified immunity—had not impliedly waived attorney-client privilege, because they were not relying on advice of counsel and did "not claim a good faith or state of mind defense." *Id.* at 229.

Plaintiffs' cited authority (Obj. Br. 13) is in accord. For example, in *Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010), the Court recognized that "simply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver; rather, to forfeit privilege, the party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.*, at *4 (internal quotation marks and citation omitted) (emphasis in original). The Court ultimately concluded that there had been *no* implied waiver because plaintiffs were not putting the attorney-client relationship directly at issue and were not directly relying on the privileged communications. *Id.*, at *5.

This was precisely the legal test that Judge Netburn applied. *See* BR ECF No. 634 at 3-4. And applying the correct legal standard, the Court correctly found that Plaintiffs failed to satisfy the requirements for implied waiver. *See id.* Wells Fargo will not rely upon any privileged or work product-protected material at trial. Wells Fargo is not asserting an advice of counsel or state of mind defense. *See* RP ECF No. 369 at 1; RP ECF No. 371 at 1. Wells Fargo intends to rely on the factual information it has produced to prove that it had no knowledge of EODs or R&W breaches. Plaintiffs are free to use this information to attempt to prove Wells Fargo's knowledge. On these facts, this case is indistinguishable from *County of Erie*.

11

Despite this clear precedent, Plaintiffs argue that reliance is *not* required for an implied waiver, citing *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012).  But, there, the Court concluded that the plaintiff impliedly waived attorney-client privilege by putting attorney-client communications directly at issue.  The plaintiff submitted affidavits from its general counsel, lead outside transactional counsel and other corporate witnesses about what they believed a contract required and what they intended certain terms to mean during the contract's negotiation.  *See id.* at *5, *7.  In the section of the opinion Plaintiffs cite (Obj. Br. 13), the court observed that reliance on counsel's opinion is not required when a party puts the attorney-client relationship directly at issue through a "good faith" defense, *i.e.*, that the party's conduct should be excused due to a good faith belief in its lawfulness.  *Id.* at *7 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).  In that instance, legal advice could "demonstrate the falsity of [the party's] claim of good faith belief" in the lawfulness of its conduct.  *Id*. (internal quotation marks and citation omitted); *see In re County of Erie*, 546 F.3d at 228 (under *Bilzerian* criminal defendant's testimony "regarding his good faith efforts to comply with the laws" would waive privilege but denial of criminal intent would not).

Again, as Judge Netburn correctly found, Wells Fargo is not relying on an advice of counsel defense, nor otherwise intending to rely on privileged communications with counsel. *See* BR ECF No. 634 at 3-4.  Wells Fargo is arguing that the non-privileged factual information before it was insufficient for it to discover loan-specific R&W breaches or know of EODs as a factual matter.  It is well established that simply asserting a lack of knowledge does not waive privilege or put a party's state of mind at issue.  *See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863-64 (3d Cir. 1994); *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia*

*Fin. Life Assur. Co.*, 12 Civ. 6808 (KMK) (PED), 2016 WL 1060336, at *2 (S.D.N.Y. Mar. 11,

2016). Accordingly, this case is distinguishable from *Bilzerian* and *MBIA Insurance Co.* For the

same reasons, Plaintiffs misplace reliance (Obj. Br. 14) on *In re Namenda Direct Purchaser*

*Antitrust Litig.*, 2017 WL 2226591, at *3 (S.D.N.Y. May 19, 2017). There, a party directly put

at issue its beliefs about the validity of legal claims by arguing that it had settled a case in "good

faith." *Id.*

### 2. Plaintiffs unlimited view of "fairness" is legally erroneous.

Plaintiffs alternatively claim that the December Order wrongly "replaces fairness as the

paramount consideration in determining whether or not a privilege should be forfeited" with

reliance. Obj. Br. 14. In Plaintiffs' view, fairness should compel Wells Fargo to "produce any

privileged documents that are relevant to its discovery or knowledge of R&W breaches." Obj.

Br. 16. The Second Circuit, however, has refused to adopt such a broad view of fairness (and

meaningless view of the attorney-client privilege).

In *County of Erie*, the court expressly rejected a line of cases—the "*Hearn*" cases—that

found implied waivers as a matter of "fairness" whenever a party asserted a claim or defense that

"put[s] the protected information at issue by making it relevant to the case." *See* 546 F.3d at 229

(rejecting *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), and *Pritchard v. County of Erie*,

2007 WL 3232096 (W.D.N.Y. Oct. 31, 2007)). The Court "agree[d] with its critics that the

*Hearn* test cuts too broadly," because "privileged information may be in some sense relevant in

any lawsuit." *Id.* The Second Circuit held that "a party must *rely* on privileged advice from his

counsel to make his claim or defense" or expressly invoke an advice of counsel or a state of mind

defense about the lawfulness of its conduct. *Id.* The court concluded that the defendants were

not relying on counsel's advice in asserting qualified immunity, because qualified immunity is

"an objective, not a subjective, test" of lawfulness. *Id.* The court further explained that the

parties were not claiming a "good faith or state of mind defense" but merely arguing "that their actions were lawful." *Id.* In the absence of reliance or a state of mind defense, the defendants had not placed the privileged communications "*at issue* so as to cause forfeiture of privilege by reason of unfairness." *Id.* (emphasis in original).

In light of the Second Circuit's limitations on fairness and the Second Circuit's recognition that the attorney-client privilege does not turn on a "fairness" sliding scale, Judge Netburn correctly ruled that "'notions of equitable fairness cannot be used as a substitute for the lack of the essential element of reliance'" and that Wells Fargo was not asserting a state of mind defense that put privileged communications directly "at issue." BR ECF No. 634 at 5 (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 274 (S.D.N.Y. 2010), and citing *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607 (S.D.N.Y. 2014)). While Plaintiffs call Judge Netburn's reasoning, the court's decision in *Aristocrat Leisure* and the cases cited therein all "erroneous" (Obj. 16), they point to no actual legal flaw in any decision. All are completely consistent with *County of Erie*. The cases Plaintiffs cite for their view of "fairness" (Obj. Br. 12), however, rely on *Hearn* and misstate the overarching role that fairness plays for implied waivers. *See In re County of Erie*, 546 F.3d at 227, 228-29 (observing that *Bilzerian* and *In re Grand Jury Proceedings* erroneously relied on *Hearn* in part but upholding the results).

### 3. Plaintiffs' specific "fairness" arguments are inapposite.

Even assuming "fairness" is as talismanic as Plaintiffs claim, their argument that an implied waiver is necessary for fairness because Plaintiffs cannot otherwise "test" Wells Fargo's "affirmative defense" of knowledge is wrong on many levels. Obj. Br. 17. As an initial matter, Plaintiffs bear the burden of proving Wells Fargo's knowledge as an element of their claims. *See*

14

BR ECF No. 634 at 4.  Wells Fargo is not placing knowledge at issue through an affirmative defense but attempting to show that Plaintiffs cannot satisfy *their* burden.

More fundamentally, Plaintiffs do not need privileged information to "test" Wells Fargo's knowledge.  *See Rhone-Poulenc Rorer*, 32 F.3d at 863-64.  Wells Fargo's knowledge is based on the facts and data before it, not counsel's legal opinions.  Wells Fargo's counsel's view of its contractual obligations does not inform what facts Wells Fargo actually "discovered."  And, Plaintiffs have conceded that counsel's opinion cannot determine the lawfulness of Wells Fargo's conduct.  *See* Obj. Ex. A 15:9-11 ("I don't think, for example, that this is an issue where we are trying to say that there was an event of default, period, because their lawyer said so.").

Plaintiffs have all the evidence they need to "test" what Wells Fargo discovered.  Wells Fargo has produced the historical factual information that it provided to its counsel, as well as the databases Wells Fargo used in the administration of its duties as trustee.  Plaintiffs have all the facts and data necessary to attempt to prove their case.  For example, ADI_0017_000103068 (referenced in Obj. Ex. F), which Plaintiffs cite (Obj. Br. 17), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  Ex. 2.  The same is true for ADI_0015_000033823  (referenced in Obj. Ex. F) (Obj. Br. 17).  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████.  *See, e.g.* Ex. 3 (exemplar repurchase correspondence).[3]

Plaintiffs' misplaced reliance (Obj. Br. 15) on a clawed-back document with partial redactions in an attempt to show unfairness reinforces the conclusion that all relevant *facts* have been disclosed in discovery, even where narrow redactions have been made to protect privileged information.  Judge Netburn reviewed this entire document *in camera* and upheld the redactions on the ground that they related solely to legal opinion, not factual business information.  *See* RP ECF No. 289.  The Court required Wells Fargo to produce everything on that spreadsheet other than legal opinion, ████████████████████████████████████████████████████████ ███████████████████████████████████████.  *See id.*  And, while Wells Fargo properly asserted privilege over counsel's assessment and recommended course of action regarding escalated repurchase demands (Obj. Br. 10), Wells Fargo produced all repurchase correspondence, including the repurchase demands described in Plaintiffs' quoted deposition testimony.  Similarly, while Wells Fargo validly asserted privilege over counsel's mental impressions regarding default notices sent to DRG (Obj. Br. 10), Wells Fargo produced the notices and correspondence concerning them.

In light of this production, Wells Fargo's counsel's opinions are neither directly at issue nor indispensable to Plaintiffs' case.  Counsel's opinions are, at most, something that "might be relevant to plaintiffs' claims" in the way that all privileged communications have the potential to

---

[3] Plaintiffs' asserted inability to test Wells Fargo's discovery of R&W breaches is also inconsistent with their prior representations to this Court.  In objecting to Judge Netburn's sampling order, Plaintiffs claimed that "[a]t summary judgment, plaintiffs will make a full factual presentation showing such discovery [of R&W breaches]" and presented "illustrative" facts.  *See* BR ECF No. 409 at 20-22 & n.23; *see also* BR ECF No. 550 at 16 (crediting this assertion).  Plaintiffs do nothing to explain why, now, they are suddenly "substantially imped[ed]" (Obj. Br. 4) from proving Wells Fargo's discovery and knowledge.

16

be relevant.  BR ECF No. 634 at 4.  The Second Circuit has made clear that mere relevance is an insufficient basis for finding implied waiver unless the party actually relies on the information. *See In re County of Erie*, 546 F.3d at 229.  As the court explained:  "privileged information may be in some sense relevant in any lawsuit.  A mere indication of a claim or defense certainly is insufficient to place legal advice at issue."  *Id.*

### 4.   Wells Fargo has not put the attorney-client relationship at issue by seeking counsel's opinion.

Plaintiffs' final argument—that Wells Fargo has put the attorney-client relationship at issue by seeking counsel's legal opinion—is flawed for the same reasons.  Obj. Br. 17.  Merely seeking counsel's view of contractual obligations does not put the attorney-client communications directly at issue.  Indeed, any other rule would substantially undermine the attorney-client privilege's core objective of ensuring that clients freely seek legal advice.  *See In re County of Erie*, 546 F.3d at 228.

On this point, the Court's decision in *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *12 (S.D.N.Y. Sept. 16, 1994), is informative.  There, the Court considered whether counsel's advice was placed at issue through a reinsurer's "good faith" liability adjustment.  *Id.*  The Court noted that "good faith" in that instance did "not appear to turn on the advice of counsel" but on the reinsured's knowledge and its placing "its own interest above that of the reinsurer."  *Id.*  The Court found no implied waiver, reasoning that:  "Even where a party's state of knowledge is particularly at issue . . . waiver of the privilege should not be implied because the relevant question is not what legal advice was given or what information was conveyed to counsel, but what facts the party knew and when."  *Id.*  Where the issue is knowledge, "[i]nvasion of the attorney client privilege is not necessary; rather, the discovering party should simply inquire directly of the other party as to its

knowledge of relevant facts, which must be disclosed." *Id.; see also In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *6 (Bankr. S.D.N.Y. Feb. 20, 2007) (no implied waiver when party can determine knowledge "from other sources and can ask direct question[s] of witnesses").  Here, Wells Fargo's knowledge of an R&W breach or EOD does or does not exist as a factual matter regardless of counsel's opinion.  Wells Fargo's knowledge can be ascertained without any waiver of privilege by examining the facts that were or were not known to Wells Fargo.

### B. Wells Fargo Should Be Permitted To Argue That It Lacked Knowledge Of EODs And R&W Breaches.

For the same reasons, Judge Netburn correctly held that there is no basis to preclude Wells Fargo from arguing that it lacked knowledge of R&W breaches and EODs.  Just as there is no basis for implied waiver, there is no basis for preclusion.  BR ECF No. 634 at 3, 5.

Plaintiffs' supposedly contrary authority is inapposite.  In each case, a party *explicitly* relied on privileged documents after having shielded them from discovery.  For example, in *Cary Oil* (Obj. Br. 9), the Court held that it would exclude testimony or documents at trial if *the same* testimony or documents had been withheld as privileged during the discovery process.  *Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 751, 760-61 (S.D.N.Y. 2003).  Similarly, in *Regeneron Pharmaceuticals* (Obj. Br. 9), the plaintiff introduced testimony that directly addressed its belief about the scope of its patent but had withheld on privilege grounds documents from the same witness on the same issue.  *Regeneron Pharms., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 593 (S.D.N.Y. 2015).  And in *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 303-04 (S.D.N.Y. 2001), the defendant asserted an advice of counsel defense while withholding privileged documents regarding the defense.  As previously discussed, Wells Fargo

will not rely on privileged information at trial to disprove its knowledge of R&W breaches or EODs and will not assert an advice-of-counsel or state-of-mind defense.

Plaintiffs' reliance (Obj. Br. 9-10) on *Arista Records LLC v. Lime Group* LLC, No. 06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011), is equally misplaced.  Contrary to Plaintiffs' claim, the Court in *Arista* did not adopt the overly-broad rule that "a party is precluded from offering any argument or evidence at trial regarding a subject for which that party withheld discovery on the basis of privilege." Obj. Br. 9.  As Judge Netburn correctly recognized, such a holding "would be a major shift in the privilege law here because it would basically require the Court to hold that any time a party wants to know what the other party knew about facts related to the case and happened to also have a lawyer, then you would have a right to inquire into the communications with that lawyer." Obj. Ex. A at 8:19-25.

Rather, *Arista* applies the well-established rule that defendants in patent infringement cases cannot withhold documents about the lawfulness of their conduct while simultaneously asserting "a good faith belief with respect to . . . the lawfulness of their conduct." *See Arista*, 2011 WL 1642434, at *1.  In the section of *Arista* Plaintiffs cite (Obj. Br. 9-10), the Court reasoned that state of mind defenses about the lawfulness of one's conduct does not require reliance but puts the attorney-client communication directly at issue. *Id.* at *3.[4]

Plaintiffs wrongly argue that Wells Fargo should be precluded from denying its knowledge of EODs and R&W breaches because Plaintiffs cannot prove what Wells Fargo knew or discovered absent the privileged information.  As explained, and as Judge Netburn found,

---

[4] Plaintiffs' remaining cited authority (Obj. Br. 11) is similarly inapposite. *See Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (plaintiffs could not argue bad faith while withholding emails discussing legal basis for bringing claims); *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 520 (S.D.N.Y. 2002) (work with outside counsel could not be withheld and used to prove intent to prosecute a patent).

Plaintiffs "have the information that [Wells Fargo] received and then they went and spoke to their lawyer about it.  And what their lawyer said or didn't say is sort of irrelevant."  Obj. Ex. A 18:6-8.  *See supra* pp 5-6, 14-16.

Finally, Plaintiffs' claim that Wells Fargo "involv[ed] counsel in routine business considerations" to withhold evidence about its knowledge (Obj. Br. 10), was previously considered and rejected by Judge Netburn for the communications Plaintiffs seek.  BR ECF No. 374 at 5-11.  Plaintiffs did not object to this ruling and cannot attack it collaterally here, well after the time for objections has passed.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").  What is more, Plaintiffs have provided no evidence, just rank speculation, that Wells Fargo did anything other than involve counsel when a legal opinion was required.  Plaintiffs attempt to rely (Obj. Br. 3-4, 10-11) on the deposition of Mr. Fay, which is impermissible because the cited testimony was not before Judge Netburn.  "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."  *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013).

## II.   JUDGE NETBURN'S JANUARY ORDER WAS NOT CLEARLY ERRONEOUS.

The January Order easily satisfies the clear error standard.  Plaintiffs have the burden to come forward with loan-specific evidence of Wells Fargo's alleged discovery of R&W breaches.  *See* BR ECF No. 392 at 17.  Plaintiffs nonetheless will not answer Interrogatory 5—which was upheld by Judge Netburn *three* times—with respect to the dates on which the Plaintiffs contend Wells Fargo purportedly discovered R&W breaches for a sample of 100 loans.  Plaintiffs' inability after the close of discovery to identify when they contend Wells Fargo discovered

breaches for 100 loans demonstrates a fundamental evidentiary flaw in Plaintiffs' case, not in Interrogatory 5.

Plaintiffs' three arguments purportedly demonstrating clear error are insufficient to satisfy their burden.  First, Plaintiffs' claim that Interrogatory 5 is "unfair" given Wells Fargo's privilege claims.  But, Interrogatory 5 and the December Order do not create some sort of unfair choice for Plaintiffs.  Interrogatory 5 seeks only Plaintiffs' contention about what Wells Fargo knew and when based on Plaintiffs' view of the evidence.  Plaintiffs do not need privileged information to arrive at their own contention.  In all events. Wells Fargo's discovery of R&W breaches is dependent on the factual data before it, not counsel's legal opinion.  Plaintiffs have the facts and data.  *See supra* pp. 5-6, 14-16.  In all events, Interrogatory 5 is permitted under Rule 26(b), which provides that a party is entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case." FED. R. CIV. P. 26(b).  It is Plaintiffs' burden to prove Wells Fargo's alleged discovery of loan-specific breaches, a burden they cannot possibly meet without disclosure of their intended proof in furtherance of their breach claims, including such basic information as *when* Plaintiffs contend Wells Fargo discovered the loan-level breaches they intend to pursue.  Plaintiffs do not argue that answering a contention interrogatory that bears directly on an element of their claims is "disproportional to the needs of the case."

Second, Plaintiffs wrongly argue that Interrogatory 5 is invalid in light of this Court's holding that willful blindness can demonstrate "discovery" of R&W breaches.  Obj. Br. 19.  Judge Netburn correctly held that willful blindness occurs at "a moment" in time.  BR ECF No. 649 at 3.  Nebulous responses like "by 2009" do not identify the moment when Wells Fargo supposedly was willfully blind.  Plaintiffs must demonstrate that Wells Fargo was willfully blind

to R&W breaches in specific loans at specific times.  *See* BR ECF No. 550 at 24.  Interrogatory 5 seeks this information, and contrary to Plaintiffs' claim (Obj. Br. 19), encompasses willful blindness because it seeks the essential date of "discovery" regardless of Plaintiffs' theory.

Finally, Plaintiffs wrongly assert that Interrogatory 5 improperly shifts the burden on Wells Fargo's statute of limitations defense.  Obj. Br. 20.  *Plaintiffs* have the burden of proving discovery on a "loan-by-loan, trust-by-trust" basis.  Obj. Ex. A at 12:8-14 ("This is your burden. You need to establish that they discovered the breaches.").  While Plaintiffs' responses may ultimately assist Wells Fargo's statute of limitations defense, they undoubtedly inform an element of Plaintiffs' claims, and their ability to satisfy *their* burden of proof.

## CONCLUSION

For the foregoing reasons, the December 18, 2017 and January 2, 2018 Orders should be affirmed in their entirety.

Dated: February 13, 2018
      New York, New York

                                     JONES DAY

                                     By: */s/ Jayant W. Tambe*
                                     Jayant W. Tambe, Esq.
                                     Howard F. Sidman, Esq.
                                     Harold K. Gordon, Esq.
                                     Amanda L. Dollinger, Esq.
                                     JONES DAY
                                     250 Vesey Street
                                     New York, NY 10281
                                     Tel:    (212) 326-3939
                                     Fax:   (212) 755-7306
                                     jtambe@jonesday.com
                                     hfsidman@jonesday.com
                                     hkgordon@jonesday.com
                                     adollinger@jonesday.com

                                     Traci L. Lovitt, Esq.
                                     JONES DAY
                                     100 High Street
                                     Boston, MA 02110
                                     Tel:    (617) 449-6900
                                     Fax:   (617) 449-6999
                                     tlovitt@jonesday.com

                                   *Counsel for Wells Fargo Bank, N.A.*