# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

---

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

January 21, 2021

*By ECF*
The Honorable Sarah Netburn
United States District Magistrate Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*Commerzbank AG and Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*,
15-cv-10033-KPF-SN and 14-cv-10102-KPF-SN

**Subject: Response to Wells Fargo's Supplemental Authority Letter (ECF 543)[1]**

Dear Judge Netburn:

Wells' supplemental authority letter (ECF 543) is really an unauthorized and excessive summary judgment surreply, far exceeding legitimate comment on the cited cases or fair response to our letter (ECF 542). Wells' letter contains five pages of single-spaced summary judgment argument, much entirely new, adds two new exhibits (sixty more pages), and incorporates by reference legal arguments in another case (another five pages), for a grand total of seventy pages. We respond to outline the improprieties and flaws in Wells' letter.

***Chavez v. Occidental Chem. Corp.*** (ECF 542-1). *Chavez* shows that New York recognizes cross-jurisdictional tolling, which Wells had previously denied. Wells chose not to argue the application of class-action tolling to Plaintiffs' claims in its summary judgment reply, WF Reply Br. at 20, and should be precluded from making such arguments under the

---

[1] ECF references are to the earlier-filed action, *Phoenix Light*.

pretext of a supplemental authority letter, unless Plaintiffs are granted leave to submit a full response. In any event, Wells' new calculations are based on mischaracterizations of both the PSAs and Plaintiffs' claims and, at best, raise issues of fact. *See* Pl. SJ Opp. at 20-23. The Second Circuit has rejected Wells' new argument that New York law does not recognize *any* class-action tolling when class members file their own actions during the class action's pendency, *see In re Worldcom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007), and Wells' speculation that some future court might hold otherwise provides no basis to disregard Second Circuit precedent. In short, class-action tolling applies under New York law, Wells has failed to argue untimeliness under class-action tolling, and its new arguments are procedurally improper, unsupported, and erroneous.

*Western & Southern Life Ins. Co. v. U.S. Bank N.A.* (ECF 542-2). We anticipated many of Wells' arguments in our letter.[2] Wells does not dispute that Judge Cohen held that "reasonable time" is a question of fact under New York law, or that PSA provisions identical to those here obligate the trustee to enforce repurchases. Wells argues that the PSA provisions here relieve Wells of repurchase duties when it assumes the servicer's duty, but this new argument is both improper and irrelevant, because Wells never assumed the servicer's duties and such special circumstances do not apply to Wells' normal trustee duties. The PSA drafters knew how to absolve Wells of normal enforcement duties, and chose not to do so for any of the trusts here. We welcome the opportunity to respond to Wells' improper new argument if the Court does not disregard it.

---

[2] For example, we identified Judge Cohen's holding regarding deemed knowledge, which we disagree with for the reasons set forth in our briefs. *See* Pl. SJ Reply at 17-18.

*MBIA Ins. Corp. v. Credit Suisse Securities LLC* (ECF 542-3). Wells uses its letter to make inaccurate statements about the record in this case and the holdings in *MBIA*:

(a)     Wells does not dispute that *MBIA* holds that newly discovered breaches relate back to earlier notices and that under New York law an RMBS trustee need not identify every specific breaching loan before enforcing repurchase claims for a trust. Instead, Wells reargues the summary judgment evidence, ignoring both that the governing standard is *discovery*, not written notice, *see* Pl. SJ Opp. at 36-38, and that Wells had written notice of *tens of thousands* of breaching loans. *Id.* at 34-35.

(b)     Wells cannot dispute that *MBIA's* distinction between "prudent" and "customary" renders Hillcoat's opinions concerning "customary" practices irrelevant. Wells' attempt to distinguish the PSAs is unsupported: the PSAs here know the difference between prudent and customary and use "customary" when they mean "customary" (*e.g.,* Stanton Ex. 12 at § 3.01) and "prudent" when they mean "prudent" (*id.* at § 8.01). Under New York contract law, different terms in the same document mean different things. *See NFL Enters. LLC v. Comcast Cable Communications, LLC,* 51 A.D.3d 52, 60-61, 851 N.Y.S.2d 551, 557 (1st Dep't 2008) (citing *Frank B. Hall & Co. of N.Y. v. Orient Overseas Assoc.,* 48 N.Y.2d 958 (1979)) (use of different terms in same contract "strongly implies" different meanings); ANTONIN SCALIA & BRYAN A. GARDNER, *READING LAW: AN INTERPRETATION OF LEGAL TEXTS* 170 (2012) ("a material variation in terms suggests a variation in meaning").

(c)     Our *Daubert* motion argued that Burnaman's materiality opinions should be excluded because he applied the wrong standard, equating "material and adverse" with "caus[ing] the default." Pl. *Daubert* Reply at 4.[3] *MBIA* shows that Burnaman's materiality

---

[3] Wells is correct that we inadvertently cited the wrong pages (5-6) of our reply brief.

-3-

standard is wrong, and that Bitner's and Hunter's standards are correct. Notably, Wells does *not* dispute *MBIA's* holding that materiality does *not* mean "causing the default."

(d)  *MBIA* cannot be read to adopt Wells' and Ross's materiality standard, because it does not consider missing documents required to be present under the PSA mortgage file requirements, but rather only considers documents absent from underwriting records. Even more importantly, only one at-issue PSA (FFML 2006-FFA) considers impeding foreclosures as relevant to the materiality of missing documents, Pl. *Daubert* Opp. at 65, and the omission of similar language in the other at-issue trusts must be read as intentional.

(e)  Wells' argument that *MBIA* supports its *Daubert* motion against Dr. Snow is unavailing because the defendant in that case *agreed* with Dr. Snow's methodology,[4] which, as here, was flexible and could be updated to reflect breach determinations at trial.[5] Pl. *Daubert* Opp. at 29-30. Because the judgment *for one trust* in favor of the *MBIA* plaintiff will be between $597 and $686 million,[6] the case gives the lie to Wells' arguments that such action cannot be economical. Wells' attempt to undermine timing assumptions caused by its own inaction does not support exclusion. Pl. *Daubert* Opp. at 29-30. Direct comparison with the *MBIA* percentages is not reasonable because (1) *MBIA* concerned only R&W breaches, not repurchase of document exceptions or servicing damages;[7] (2) *MBIA* considered a random

---

[4] See *MBIA Ins. Corp. v. DLJ Mortg. Capital, Inc.*, Index No. 603751/2009, Letter from Richard A. Jacobson to Hon. Jennifer G. Schecter, Jan. 11, 2021, Doc. No. 2238, at 1 ("Jacobson Ltr.").

[5] See *MBIA Ins. Corp. v. DLJ Mortg. Capital, Inc.*, Index No. 603751/2009, Letter from Marc Kasowitz to Hon. Jennifer G. Schecter, Dec. 21, 2020, Doc. No. 2233, at 2 ("Kasowitz Ltr.").

[6] *See* Kasowitz Ltr. at 1; Jacobson Ltr. at 1.

[7] Kasowitz Ltr. at 1 ("400 sample loans" reviewed for conformity with "Credit Suisse's representations and warranties.").

sample of loans,[8] in contrast to the adverse selection of loans with evident breaches; (3) Dr. Snow's sensitivities reflect less than 100% repurchase, Pl. *Daubert* Opp. at 34; and (4) Wells' arguments concerning Dr. Snow's assumptions have been rejected by other courts and go to weight, not admissibility. Pl. *Daubert* Opp. at 31-41.

Very respectfully,

 */s/ Philip R. Schatz*

Philip R. Schatz

cc: Counsel of Record (via ECF)

---

[8] *Id.*